14218

STATE v. MANOS

(183 S. E., 582)

*Messrs. Morgan & Cothran*, for appellant,

*Mr. W. A. Bull, County Solicitor*, for respondent,

February 6, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

In 1935, the General Assembly passed an Act (Act May 14, 1935, 39 St. at Large, 325) to legalize and regulate the manufacture, sale, possession, etc., of alcoholic liquors. It was approved by the Governor on May 14, of that year, and immediately went into effect. The tax commission was named and authorized to administer and enforce the statute; one of its duties being (Section 7) "to have prepared and distributed stamps suitable for denoting the tax on alcoholic liquors enumerated herein and said stamps and other stamps required under this Act shall be sold only to such persons as hold a valid wholesale license under the provisions of this Act." It was also provided (Section 11) that "any persons found in possession of any bottle or other package containing alcoholic liquor without having affixed the revenue stamps thereto, as required by this Act * * * shall be guilty of a misdemeanor," etc.; and (Section 17) "that any alcoholic liquors found in the possession of any one within this State not having affixed to the bottle or container the stamps required in this Act, as hereinabove provided, are hereby declared to be contraband," etc.

On September 30, 1935, the defendant Manos was tried in the County Court of Greenville County upon an indictment charging him with having in his possession certain contraband liquor, in violation of the statute above referred to. He was convicted as charged, and appeals from the judgment and from the sentence imposed upon him.

It is admitted that the appellant had in his possession about May 17, 1935, at his place of business in Greenville, S. C., approximately 175 gallons of liquor, mostly gin, all of which was in unstamped containers or packages; and that

on May 20, this liquor was seized as contraband by officers of Greenville County. It also appears that on May 20, the defendant applied to the tax commission for a license as a liquor dealer in the County of Greenville, and that such license was issued him on May 23.

On trial of the case, it was agreed between defendant's counsel and the solicitor that an affidavit of W. G. Query of the tax commission, in order to save the necessity of his appearing in person, "might be used"; it being stated by the solicitor at the time that he would not concede that the affidavit had any bearing on the case as to relevancy, but that he would admit that Mr. Query would testify to what was stated in it if he were present. After it was read to the jury by Mr. Cothran, the solicitor moved to strike it out on the ground that it was irrelevant and immaterial. The trial Judge granted the motion, and his action in doing so is made an assignment of error.

We think that the solicitor should have objected to the admission of the affidavit before it was read to the jury or at the time it was being read. However, as the motion to exclude it was made immediately after it was read, we think, in the peculiar circumstances recounted, it was a matter within the sound discretion of the trial Judge. But if it should be thought that we err in this, no harm was done the appellant for several reasons. The affidavit stated, in substance, that the defendant made application to the tax commission on May 20 for a license as a wholesale liquor dealer, and that such license was issued him on May 23; and that it was impossible for the commission to furnish stamps as soon as the Act was approved, but that they were furnished as soon as the commission could obtain them. The defendant himself testified that he received the liquor in question about May 17, and that it was unstamped and in his possession after the Act was approved by the Governor; and that some days after it was seized by the officers a

license for the sale of liquor was isued him by the Commission.

The application for a license, however, or its issuance to the defendant by the commission, would have nothing to do with his admitted violation of the law, and was no defense to the charge made; and the argument that because the commission issued him a license to sell liquor after he was arrested, shows that he was a fit person for the business and should, therefore, be excused for having in his possession contraband liquor, is untenable and unsound. Also, while it is true that the state alone could furnish stamps to be affixed to the packages containing the liquor, such stamps could not be furnished until the commission had had reasonable time to obtain them; and the contention that the state is estopped to prosecute the defendant because it failed to furnish him stamps on application therefor is clearly, under the admitted facts, wholly without merit.

The appellant also complains of the refusal of the trial Judge to charge the jury, that before they could convict the defendant, they should be satisfied that he intended to violate the laws of the state in regard to the whisky involved in the case. This assignment of error cannot be sustained. No apt words are found or employed in the Act in question which indicate that intent is a necessary element of the crime charged; and when the defendant violated the provisions of the statute, by having in his possession contraband liquor, the offense was complete, regardless of motive or intent.

In 16 C. J., 76, the writer says: "As a general rule where an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required. The legislature, however, may forbid the doing of an act and make its commission criminal without regard

to the intent or knowledge of the doer, and if such legislative intention appears the Courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt." See also, 8 R. C. L., 12.

The rule stated has been adopted and followed in this jurisdiction. *State v. Reeder*, 36 S. C., 497, 15 S. E., 544; *State v. Assmann*, 46 S. C., 554, 24 S. E., 673; *State v. Westmoreland*, 76 S. C., 145, 56 S. E., 673, 8 L. R. A. (N. S.), 842; *State v. Duckett*, 133 S. C., 85, 130 S. E., 340.

The appellant received a fair and impartial trial; his conviction was fully justified under the law and the admitted facts; and no good reason has been shown why the verdict of the jury should not be allowed to stand.

The judgment, therefore, of the Court below is affirmed.

MESSRS. JUSTICES CARTER and FISHBURNE concur.

MESSRS. JUSTICES BONHAM and BAKER dissent.

MR. JUSTICE BONHAM (dissenting) :

The appellant was convicted in the County Court for Greenville County for violating the Act of the General Assembly, approved May 14, 1935 (39 St. at Large, 325), which makes legal the sale of intoxicating liquors in South Carolina, which is generally spoken of as the "Liquor Law." The specific charge of violation was that appellant had in his possession alcoholic liquors without having affixed to the bottles or containers the stamps required by the Act.

The Act further provides that:

"The Tax Commission shall administer and enforce the provisions of this Act, that the licenses and taxes shall be paid to the Tax Commission." Section 12.

"That the Tax Commission is hereby authorized, empowered and directed to promulgate rules and regulations, not inconsistent with the provisions of this Act for the payment and collection of the licenses and taxes herein levied and such rules and regulations shall have the force and effect of law," Section 13.

"The Tax Commission is hereby authorized and directed to have prepared and distributed stamps suitable for denoting the tax on alcoholic liquors enumerated herein and said stamps and other stamps required under this Act shall be sold only to such persons as hold a valid wholesale license under the provisions of this Act." Section 7.

May 16, 1935, two days after the approval of the Act, John K. Manos made application to the tax commission for license as a wholesale dealer in liquors at Greenville, S. C., which was granted May 23. Evidently in anticipation of the granting of his application for license, and to save delay after the receipt of the license, Manos ordered a supply of liquors, which arrived and were unloaded in his absence and placed in his warehouse, about May 17 or 18; and on the 20th of May were seized by the sheriff on the ground that the liquors were contraband because the containers did not have on them the stamps required.

At the trial, Mr. Cothran, representing the defendant, stated to the Court that the solicitor had agreed with him, that to save Mr. W. G. Query, chairman of the tax commission, from coming to testify in person, his affidavit might be used; to this Solicitor Bull said: "I will admit that he would testify that if he were here.   *   *   *   I don't admit that it has any bearing on this case as to relevancy."

The affidavit was read to the jury, and thereupon the solicitor moved to strike it from the record on the ground that it was irrelevant, and immaterial, and constituted no

defense, to the charge. After argument, the motion was granted; defendant excepted and now appeals.

The affidavit, which is set out in the record, discloses: that the tax commission had to do a large amount of work in investigating the standing of applicants for license, and the preparation of necessary licenses and stamps. That the tax commission on May 20, 1935, had received the application for license of J. K. Manos. It was not issued that day as it was necessary to investigate the applicant's fitness, and get his bond approved. *"Nor at this time had the revenue stamps been printed and prepared for distribution."* (Italics added.) That the action of the sheriff in arresting J. K. Manos and the cause thereof on May 20 were known to the commission, nevertheless, a license was issued to him on May 23, 1935. That it was impossible for the tax commission to issue licenses and furnish revenue stamps as soon as the Act was approved, nor could investigations as to the fitness of applicants be immediately made; that stamps were furnished as soon as the tax commission could get them.

John K. Manos was not allowed to testify that he went to the tax commission for stamps and was unable to get them; nor was he allowed to testify that none of the whisky was sold at any time, nor that it was never his intention to violate the liquor law.

At the request of defendant's counsel, his Honor charged the jury that at the time of his arrest "defendant had a right to have whisky in his possession for lawful purposes." He refused to charge request 2, which was to the effect that if defendant had no intent to violate the law, the jury must acquit him. Requests 3 and 4 stand upon the proposition that if the State could not furnish the stamps to be put upon legal whisky, the State is estopped from prosecuting the defendant, and that it was not the intent of the Legislature to impose a penalty upon a defendant for failing to affix the stamps when it appeared that the State was un-

able to furnish them. The Court refused to charge these two requests.

From all these adverse rulings of the Court, the defendant appeals.

The Court charged: "That at the time he was arrested he had under the law a right to have whiskey in his possession for lawful purposes." Nevertheless, he denied to defendant the right to offer testimony which tended to prove that the whiskey for which defendant was being tried was in his possession for lawful purposes. We think it was error to exclude the affidavit of Mr. Query, and the testimony of the defendant as it relates to his dealings with the tax commission in his efforts to get the stamps, and in relation to the way in which the whiskey was in his possession.

The State, through its spokesman, the Legislature, says to one seeking to sell intoxicating liquors: "You may do so provided you get a license to, and put stamps on the vessels which contain your liquors. My agent, the Tax Commission, will investigate to see if you are a fit person to have license and, if satisfied that you are, will sell you the stamps to put on your containers."

No one else can do this. Now in this case, the tax commission is satisfied that Manos is a fit person to be licensed as a wholesale dealer in liquors, but is unable to furnish him the stamps, which it alone is authorized to furnish. For the failure to have these stamps, the State alone is responsible. Ought not it be estopped from prosecuting the appellant?

The case is, in spirit, akin to that of *State v. Aiken,* 107 S. C., 359, 92 S. E., 1043. In that case, Aiken, who lived in Greenville, in which county there was no dispensary, bought some whiskey of a dispensary in Richland County, and transported it in his private luggage to Greenville. He was tried and convicted on a charge of transporting contraband liquor. On appeal this judgment was reversed. Mr. Justice Watts, afterwards Chief Justice, said for the Court:

"Under Section 825 of the Criminal Code it provides that: 'All liquors in this State, except those purchased from a county dispensary for a lawful use, and those passing through the State, consigned to points beyond this State, shall be deemed contraband, and may be seized in transit without warrant.' This clearly shows before the offense of transportation under this section is complete and liquor can be seized as contraband it must be shown that the liquor is intended for unlawful use. The defendant purchased from a county dispensary who had the legal right to sell it to him; there is nothing to show that he intended to use it unlawfully, and, having purchased it lawfully and legally and intending it for personal use and not unlawful use, he had the right to transport it with his personal baggage and retain possession of it."

The spirit of this ruling applies to the present case.

The purpose of the Legislature in requiring that liquors intended for sale in this state should be stamped, was to enable those charged with the enforcement of the law to identify the liquors to be such as the possessor had a right to have. It prescribed the method by which the stamps to be attached should be obtained, to wit, from its legally constituted agent, the tax commission. There was no other source from which they could be obtained. In the present case, the Court told the jury that one might have whisky in his possession for a lawful use, but when the defendant sought to show that he had the whisky seized by the sheriff for the lawful purpose of the Act which the Legislature had passed, he was denied the opportunity to do so. The effect of such ruling is to put the State in the anomalous position of saying to the defendant: "You may lawfully sell liquor if you will get a license and affix to your liquors the stamps which I will sell you, but I am unable to furnish you the stamps, therefore the liquors which you have in your possession for the lawful purpose of selling with my sanction, are contraband, and you must be punished." We

do not think the Legislature ever intended to place the State in such an untenable position.

The defendant has been investigated by the tax commission ·and a license granted to him with knowledge of his trial and conviction under these peculiar circumstances; he has received the stamps from the tax commission and is, it is reasonable to suppose, engaged in the lawful business of selling liquors at wholesale. And yet, he is under sentence for having in his possession liquor intended for this very business, which is contraband because it did not have affixed to it the stamps which the State alone could furnish to him and which the state admittedly could not furnish. Surely the state should be estopped to punish the defendant because of its own default.

It is argued that it would set a dangerous precedent to acquit this appellant. A former distinguished member of this Court used to say: "Let every tub stand on its own bottom." When one is found in possession of unstamped liquors and it appears that he has made no effort to obtain a license to sell them, nor any effort to obtain the required stamps to be affixed, and it further appears that the tax commission was prepared to furnish the stamps upon application, there need be no fear that the penalty of the law will fail to overtake the culprit.

The judgment of the Court should be that the judgment of the lower Court be reversed.

MR. JUSTICE BAKER concurs.