1649

The STATE, Respondent v. Jeffrey JEFFERIES, Appellant.

(403 S.E. (2d) 169)

Court of Appeals

*Assistant Appellate Defender Franklin W. Draper*, of *SC Office of Appellate Defense*, and *Belinda Ellison*, Columbia, and *Thomas P. Bellinger*, Lexington, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., Amie L. Clifford* and *Norman Mark Rapoport*, Columbia, and *Sol. Donald V. Myers*, Lexington, *for respondent.*

Heard Feb. 19, 1991; Decided Apr. 22, 1991.

Rehearing Denied May 3, 1991.

GARDNER, Judge:

Jeffrey Jefferies (Jefferies) was convicted of assault and battery of a high and aggravated nature, grand larceny of a motor vehicle, and kidnapping. We affirm.

## ISSUES

The issues of merit are (1) whether the trial judge committed reversible error in refusing to quash the indictment for kidnapping on the grounds of double jeopardy, collateral estoppel or inconsistent verdict, (2) whether the trial judge committed reversible error in refusing to give the defendant's

requested charges on intent as an element of kidnapping, and (3) whether the trial judge erred in refusing to define the words "positive act" which he had used in charging the jury.

## FACTS

We review the essential facts in a light most favorable to the State.

Jefferies was an inmate at a Department of Youth Services (DYS) Facility. He ran away and came upon a car at a filling station near Interstate I-26. The car was running and no one was in the driver's seat. He opened the door and began to get in when Roland Caldwell, the owner, returned and attempted to stop him. Jefferies slammed Caldwell with the door several times, closed it and began to drive away. Caldwell continued to hold on to a slightly open window as Jefferies drove away, pleading with Jefferies to release his four-month old son who was in the car. Jefferies ignored Caldwell's pleas, offering only to slow down and let Caldwell get off the car. As Jefferies approached the I-26 ramp at a higher rate of speed, Caldwell fell from the car.

A pick-up truck stopped to assist Caldwell and they gave chase. They followed Jefferies on to I-20 and then off the interstate into a parking area and then into an apartment complex, where Jefferies escaped. Caldwell then called the police. This incident occurred about 8:00 p.m. in Lexington County. Later that night at approximately 3:00 a.m., the police found Jefferies and the stolen automobile at a nightclub near Gaffney, South Carolina. The police questioned Jefferies who first denied any knowledge of the incident but later said he left the child with a woman in front of a store near the Newberry exit off I-26.

The child was found at about 3:45 a.m. in Newberry County. The child had been abandoned in the back of a service station but was uninjured.

In January 1989, Jefferies was indicted in Newberry County for willful neglect and willful abandonment. He pleaded guilty to willful abandonment and was sentenced. In February 1989, he was indicted in Lexington County on the charges involved in this case.

Jefferies did not testify. He proffered testimony, which the trial judge excluded, from four witnesses to establish the fol-

lowing facts: (1) he ran away because DYS would not give him a pass for the Thanksgiving holiday; (2) he took the car to get home for the holiday; and (3) he did not see the child in the back seat until the father began yelling about the child. At trial and on appeal, Jefferies argues that this evidence showed that he did not intend to kidnap the child.

The child was discovered approximately 30 miles from the point Jefferies took the automobile.

## DISCUSSION

### I.

Jefferies moved to quash the indictment on the grounds of double jeopardy, collateral estoppel and election of remedies. We hold that the trial judge properly overruled the motion because, *inter alia,* abandonment is not an essential element of kidnapping.

Double jeopardy prohibits a second prosecution for the ■ same offense after acquittal or conviction, and multiple punishment for the same offense. *State v. Magazine,* — S.C. —, 393 S.E. (2d) 385 (1990).

Recently, the United States Supreme Court case of *Grady v. Corbin,* — U.S. —, 110 S. Ct. 2084, 109 L. Ed. (2d) 548 (1990) added a new dimension to the traditional concept of the double jeopardy clause.

We quote:

> We have long held, see *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not "requir[e] proof of a fact which the other does not." In *Illinois v. Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. (2d) 228 (1980) we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in *Vitale.* We hold that the Double Jeopardy Clause bars a subsequent prosecu-

tion if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

— U.S. at —, 110 S. Ct. at 2087 [Footnotes omitted].

Jefferies argues the following: (1) kidnapping is a continuing offense that ends upon restoring freedom, and therefore restoring freedom is an element of kidnapping; (2) abandonment is an element of willful abandonment; (3) the element of abandonment is the same as restoring freedom, and therefore is an essential element of kidnapping; and, therefore, (4) double jeopardy bars the kidnapping charge. The fallacy of this argument is that the restoration of freedom is not an essential factor or element of the crime of kidnapping. If it were, a kidnapper who murders his victim could not be convicted for kidnapping because of his failure to restore the victim's freedom. Kidnapping is a statutory offense set forth in S.C. Code Ann. § 16-3-910 (1976). In essence the crime is completed when the perpetrator unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away the victim by any means.

Jefferies' argument that the restoration of freedom is an essential element of kidnapping seems, on first blush, to be well founded in authority from our Supreme Court. Several cases indicate that a kidnapping commences when one is wrongfully deprived of his freedom and continues until freedom is restored. *See State v. Ziegler*, 274 S.C. 6, 10-11, 260 S.E. (2d) 182, 184-185 (1979); *State v. Hall*, 280 S.C. 74, 78, 310 S.E. (2d) 429, 431 (1983); *State v. Kornahrens*, 290 S.C. 281, 287, 350 S.E. (2d) 180, 184 (1986), *cert. den.* 480 U.S. 940, 107 S. Ct. 1592, 94 L. Ed. (2d) 781 (1987). A careful analysis of these decisions, however, reveals that the point necessary for the decision in each case was that kidnapping is a continuing offense as long as the kidnapped person is deprived of his freedom. It was not the purpose of the court to set forth the elements of kidnapping but simply to show that it was a continuing offense. We therefore hold that the words "and continues until freedom is restored" as used in the above-mentioned cases do not describe a substantive element of the offense.

The crime of kidnapping is complete when the kidnapper unlawfully deprives the kidnapped person of his freedom. For this reason we hold that the restoration of freedom is not an essential element of kidnapping. We, therefore, reject Jefferies argument that his prosecution in this case was barred on the grounds of double jeopardy.

Jefferies next contends that his prosecution was barred by the doctrine of collateral estoppel. He first states that he pleaded guilty and was convicted of willful abandonment of the Caldwell child. S.C. Code Ann. § 20-7-80 (1976) provides:

> It shall be unlawful for any parent, male or female, or any other person legally responsible for the care and support of a minor child under the age of sixteen years to wilfully abandon such child, as provided in § 20-7-1570. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and, upon conviction, shall be punished within the discretion of the circuit court.

Jefferies then argues that when he pleaded guilty in Newberry to the crime of willful abandonment of a child, that there had been a judicial finding that (1) he was "legally responsible" for the Caldwell child and (2) since there was a legal determination that he was legally responsible for the Caldwell child, the State was collaterally estopped from asserting that he unlawfully seized the child. The doctrine of collateral estoppel does not preclude a subsequent prosecution for a separate offense where the prior conviction was based upon the defendant's plea of guilty. *Jones v. State*, 502 S.W. (2d) 164 (Tex. Crim. App. 1973); *State v. Popishel*, 218 N.W. (2d) 602 (Iowa 1974).

Moreover, our Supreme Court has abolished the rule prohibiting inconsistent verdicts. *State v. Alexander*, — S.C. —, 401 S.E. (2d) 146 (1991).

## II.

We hold that if the trial court erred in refusing to charge that intent is an element of kidnapping, the error was harmless.

The defendant submitted numerous requests to charge;

several of which related to the argument that the State must prove the element of intent in order to prove the crime of kidnapping. The trial judge refused these requests.

The trial judge charged the kidnapping statute thusly:

> The criminal act of kidnapping is set forth under Section 16-3-910 of the South Carolina Code of Laws which provides: Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by means (sic) whatsoever without authority of law except when a minor is seized or taken by a parent shall be guilty of this crime.

The trial judge then charged:

> There are two essential elements to the offense of kidnapping, each of which must be proved by the State beyond a reasonable doubt. These elements are one, there must be some *positive act* or conduct on the part of the kidnapper which results in a taking, carrying away, seizure or detention of the victim. [Emphasis added.]

> Second, the taking, carrying away, seizure or detention must have been accomplished without any lawful authority or warrant therefor. That is that the taking must have been unlawful.

In our research, we find no South Carolina case regarding intent as a necessary element of kidnapping; however, the State, in its brief (apparently conceding that intent is an essential element of the crime of kidnapping) quotes the case of *State v. Ferguson,* — S.C. —, 395 S.E. (2d) 182 (1990). *Ferguson* involves a conviction for cocaine distribution under S.C. Code Ann. § 44-53-370(a) (1985). This code section makes it unlawful to possess a controlled substance with the intent to distribute. The trial court's jury charge amounted to a strict liability charge. In overruling the trial judge, the Supreme Court first noted that, absent a contrary legislative intent, statutory crimes include some elements of intent. The various types of intent include purpose, knowledge, recklessness, or criminal negligence. *Ferguson,* S.C. at —, 395 S.E. (2d) at 184. Finding no legislative intent to create a strict liability offense, the court concluded in *Ferguson* that the State must prove at

least criminal negligence. the court, however, affirmed the circuit court because the error was harmless given the overwhelming evidence that the defendant knew he was distributing cocaine. We hold that *Ferguson* directs us in this case.

It can be reasonably argued that the words of the statute clearly denote the requirement of intent because it requires that the perpetrator "unlawfully" seize the victim. But, rather than rely on an analysis of the statute, we hold that if there were error in the refusal to make the requested charge, it was harmless. The record contains evidence establishing beyond a reasonable doubt that Jefferies intended to steal Caldwell's automobile and that in the process discovered that Caldwell's child was in the car. Jefferies thereafter drove off with the child and abandoned him miles away from his father without telling anyone where he left the child. While it might be argued that Jefferies did not see the child when he first got in the car, the evidence of record proves beyond a reasonable doubt that he almost immediately discovered the child was there and intentionally deprived the child of his freedom.

Even assuming that the trial court erred by refusing the requested charges, we hold that the error was harmless. After a full review of the entire record, we are satisfied that sufficient, competent evidence conclusively establishes Jefferies' guilt to the extent that no other rational conclusion could have been reached. *See State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989) (the Supreme Court will not set aside a conviction because of insubstantial errors not affecting the result when the defendant's guilt has been conclusively proven by competent evidence such that no other rational conclusion could be reached.).

### III.

We find the trial judge erred when he refused the jury's request to define the words "positive act" which he had used when charging the jury, but we, nevertheless, affirm because we hold this was harmless error.

The jury requested clarification of the judge's charge on two occasions. The first was about two hours after they began deliberating and then another request was made about two hours later, including the lunch hour. When they returned from lunch, they made the second request for reinstruction

and at that time requested the trial judge to define the words "positive act." The trial judge stated:

> What is a positive act, *unless y'all come up with some instruction,* I don't think I should—I think that's tinkering with something that can kick me in the teeth. [Emphasis added.]

As to "positive act," the trial judge told the jury he could not define that term; its meaning was left up to them. He also told the jury he could get into trouble by trying to define the term and "could go on talking about positive and negative." During a bench conference in the presence of the jury, but outside their hearing, Jefferies' counsel responded that the jury be charged that "positive" applies to act and positive conduct.

After the jury retired, defendant's counsel requested the trial judge to charge the jury the words "positive act" should be defined as a willfully committed act. The trial judge rejected this argument and request.

■ The purpose of jury instructions is to enlighten the jury and aid it in arriving at a correct verdict. *State v. Leonard,* 292 S.C. 133, 355 S.E. (2d) 270 (1987). We hold that when a trial judge uses a word or words which the jury does not understand, he has a duty to explain the words upon request. *Cf. Moore v. Mauldin,* 199 Ga. 780, 35 S.E. (2d) 511 (1945).

■ We hold the words "positive act" were included in the trial judge's charge for the purpose of showing that the law does not concern itself with mere guilty intention, unconnected with any overt act. It has long been the law that intent alone, not coupled with some overt act putting the intent into effect is not cognizable by the courts and does not constitute a crime.[1] We hold that the trial judge could have clarified the matter by a simple definition of the words "positive" and "act."

Although we hold that the trial judge erred in not explaining to the jury what he meant, the error was harmless because of the overwhelming evidence of guilt contained in the record before us.

---

[1] *See State v. Evans,* 216 S.C. 328, 57 S.E. (2d) 756 (1950).

We find no merit in the remaining questions put forth by Jefferies.

## CONCLUSION

For the reasons given, we find no error in the trial judge's refusing to quash the indictment for kidnapping on the grounds of double jeopardy, collateral estoppel or inconsistent verdicts. We also hold that the trial judge's failure to grant Jefferies' request to charge the law of intent and to explain the words "positive act" were harmless error because the defendant's guilt was conclusively proven by competent evidence and no other rational conclusion could have been reached by the jury. The conviction and sentences are therefore affirmed.

Affirmed.

BELL, J., and LITTLEJOHN, Acting Judge, concur.