## 24111

The STATE, Petitioner v. Jeffrey Charles JEFFERIES, Respondent.

(446 S.E. (2d) 427)

Supreme Court

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Asst. Atty. Gen., Norman Mark Rapoport, Asst. Atty. Gen.,* Columbia, and *Donald V. Myers, Sol., Eleventh Judicial Circuit,* Lexington, *for petitioner.*

*Franklin W. Draper, Asst. Public Defender,* and *South Carolina Office of Appellate Defense,* Columbia, *for respondent.*

Heard Oct. 20, 1993.

Decided July 5, 1994; Reh. Den. July 28, 1994.

TOAL, Justice:

The State of South Carolina ("State") appeals the judgment of the Court of Appeals in *State v. Jefferies*, 308 S.C. 414, 418 S.E. (2d) 339 (Ct. App. 1992), which summarily remanded the case for a new trial. We reverse.

## FACTS

On the evening of November 25, 1988, the defendant ("Jefferies") escaped from John G. Richards Youth Detention Center located in the St. Andrews area of Richland County. After

his escape, Jefferies looked for an automobile to steal so he could go home to Gaffney, South Carolina.

Shortly after Jefferies' escape, Ronald Caldwell ("Father") and his four-month-old son, Matthew, drove into a convenience store parking lot at Ashland and St. Andrews Roads to use the telephone. Matthew was attached to a heart monitor. He was strapped in an infant car seat. The evidence is conflicting as to whether Matthew was in the front seat or the back seat of the automobile.

The Father decided to leave Matthew in the automobile with the motor running while he used the pay telephone. Realizing that he did not have enough change, the Father started to go into the store. The Father glanced back at his automobile and saw Jefferies opening the door and getting in.

Jefferies got into the automobile and began to drive away. The Father immediately ran to the automobile and grabbed onto the partially open driver's window. Jefferies continued to drive on to Ashland Road then right on to St. Andrews Road heading towards Interstate 26.[1] As the Father hung onto the window and car door, he pleaded with Jefferies to release the baby.

Jefferies admits that while the Father was hanging onto the moving vehicle, pleading for the release of his child, Jefferies looked around in the automobile and saw Matthew. Nevertheless, Jefferies continued towards the interstate. On the entrance ramp and Interstate 26, Jefferies increased speed and the Father fell off. The Father was picked up by onlookers and they gave chase. Shortly thereafter, they lost Jefferies. The Father then called the police.

Jefferies was picked up by the Gaffney police between 2:30 and 3:00 a.m. on November 26, 1988 in Cherokee County, South Carolina. He told police that he left the baby at a service station in Newberry, South Carolina, more than twenty miles from where the automobile was stolen. Matthew was found, in his car seat still attached to the heart monitor, beside the garbage dumpster of a service station in Newberry, South Carolina shortly after 3:45 a.m. that same morning. Matthew was taken to the Newberry Hospital, treated and released.

---

[1] Interstate 26 is approximately six-tenths of a mile from the intersection of Ashland and St. Andrews Roads.

At trial, Jefferies, through his attorneys, admitted stealing the automobile. Jefferies' attorneys claimed, however, that because Jefferies did not know Matthew was in the automobile at the time he stole the automobile, Jefferies could not have intended to kidnap Matthew. The trial judge refused the charge on "intent" submitted by Jefferies. Instead, the trial judge read the statute on kidnapping and charged as an additional element "positive act."

After the jury began deliberation, the foreman asked the trial judge to re-charge the law of kidnapping. The jury was brought in and the judge charged the jury with language identical to that of the first charge. The trial judge then asked the jury to return to the jury room and resume deliberation. The foreman again sent a note asking for the judge to define the term "positive act." The trial judge refused to define the term and directed the jury to continue their deliberations. Finally, the jury returned a verdict of guilty of kidnapping.[2]

On direct appeal, Jefferies claimed the trial judge erred in not defining the term "positive act." Jefferies also claimed the trial judge erred in not charging "intent" as an element of kidnapping. The Court of Appeals held the trial judge's failure to define "positive act" was error. The Court of Appeals did not reach the issue of whether "intent" must be charged, rather they summarily held that any error was harmless beyond a reasonable doubt. *State v. Jefferies*, 304 S.C. 141, 403 S.E. (2d) 169 (Ct. App. 1991). This Court denied certiorari and Jefferies appealed to the United States Supreme Court. The United States Supreme Court remanded the case to the Court of Appeals to review in light of *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991). *Jefferies v. South Carolina*, — U.S. —, 112 S.Ct. 1464, 117 L.Ed. (2d) 611 (1992). The Court of appeals granted Jefferies a new trial in a summary opinion. *State v. Jefferies*, 308 S.C. 414, 418 S.E. (2d) 339 (Ct. App. 1992). The State appeals.

### LAW/ANALYSIS

The State first claims that the Court of Appeals was not required to order a new trial for Jefferies by virtue of the remand from the United States Supreme Court.

---

[2]Jefferies was charged with grand theft auto and assault of a high and aggravated nature. The jury found him guilty of all charges. However, these charges are not the subject of this appeal.

We agree. *See e.g., Arnold v. South Carolina*, 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed. (2d) 757 (1988) (remanding for harmless error analysis), *appeal after remand*, — S.C. —, 420 S.E. (2d) 834 (1992) (affirming conviction), *cert. denied*, — U.S. —, 113 S.Ct. 1302, 122 L.Ed. (2d) 691 (1993). The United States Supreme Court used the following language in remanding the case to the Court of Appeals: "[t]he judgment is vacated and the case is remanded to the Court of Appeals of South Carolina for further consideration in light of *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991)." This is the identical language used by the United States Supreme Court in remanding *Arnold v. South Carolina*, 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed. (2d) 757 (1988), and *Plath v. South Carolina*, 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed. (2d) 757 (1988).[3] Consistent with our prior opinion in *Arnold v. State*, — S.C. —, 420 S.E. (2d) 834 (1992), we do not read the language of the United States Supreme Court's remand as requiring an automatic new trial. Rather, we read the remand as a directive to the Court to determine whether the constitutional error was harmless.

Next, the State contends the trial judge's instructions on the mental element or required *mens rea* of kidnapping was sufficient. Further, the State contends that if the trial judge erred in instructing the jury on the *mens rea* required, the error was harmless beyond a reasonable doubt. We agree.

## I. *Mens Rea*

"Few areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." *United States v. Bailey*, 444 U.S. 394, 403, 100 S.Ct. 624, 631, 62 L.Ed. (2d) 575, 586 (1980). "Criminal liability is normally based upon the concurrence of two factors, "an evil meaning mind [and] an evil doing hand,' " *Id.* at 402, 100 S.Ct. at 631, 62 L.Ed. (2d) at 586; although this Court has recognized that the legislature may declare an act criminal regardless of the mental state of the actor. *State v. Ferguson*, 302 S.C. 269, 395 S.E. (2d) 182 (1990); *State v.*

---

[3] As the remand of both of these cases was prior to the final United States Supreme Court decision in *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991), the prior remand of *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed. (2d) 546 (1988), was cited in *Arnold, supra*, and *Plath, supra*.

*Manos,* 179 S.C. 45, 183 S.E. 582 (1936). Thus, we must determine what, if any, *mens rea* is required for the crime of kidnapping.

The required *mens rea* for a particular crime can be classified into a hierarchy of culpable states of mind in descending order of culpability, as purpose, knowledge, recklessness, and negligence. *Bailey,* 444 U.S. at 404, 100 S.Ct. at 631, 62 L.Ed. (2d) at 586-87. "At common law, crimes generally were classified as requiring either 'general intent' or 'specific intent.' This venerable distinction, however, has been the source of a good deal of confusion." *Id.* at 403, 100 S.Ct. at 631, 62 L.Ed. (2d) at 586. Thus, the commentators and Model Penal Code have rejected the traditional dichotomy in favor of the hierarchical approach. *See* W. LaFave & A. Scott, *Handbook on Criminal Law* § 28 (1972).

The kidnapping statute does not expressly state whether a *mens rea* is required.[4] Thus, we look to common law and the development of the statute to determine whether the legislature intended the crime to require a *mens rea. State v. Ferguson,* 302 S.C. 269, 395 S.E. (2d) 182 (1990).

Originally, kidnapping required the lesser degree of mental culpability of "knowledge."[5] In 1937, the addi-

---

[4] S.C. Code Ann. § 16-3-910 (1985) provides as follows:

Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law except when a minor is seized or taken by his parent, is guilty of a felony and upon conviction, shall suffer the punishment of life imprisonment unless sentenced for murder as provided in § 16-3-20.

S.C. Code Ann. § 16-3-910 was amended in 1991 to provide a penalty of thirty years rather than life. S.C. Code Ann. § 16-3-910 (Supp. 1993).

[5] Section 2 of Act 324, 1871 provided as follows:

That if any person shall procure and carry without the limits of the State any minor or person under the age of twenty-one years, without the consent of the parents or guardian of such minor, such person shall, upon conviction thereof, be fined in a sum not less than one hundred, nor more than five hundred dollars, or be imprisoned in the Penitentiary of the State for a period of not less than one year.

1871 S.C. Act 324 § 2.

While not explicit, implied in the common law crime of kidnapping is a *mens rea.* The act of carrying a person under the age of twenty-one out of the State without the permission of the parent or guardian was required to be coupled with the act of procuring the child. Implicit in the word "procure," as used in the statute, is taking possession of the minor with some degree of effort or knowledge.

tional element of "holding for ransom" was required which indicated that the actor must have had a "purpose" or "desired result." Act No. 106, 1937 S.C. Acts 137. This element, however, was deleted in 1976, clearly indicating the legislature intended to lower the standard of culpability required to hold one liable for the crime of kidnapping. Act No. 684, 1976 S.C. Acts 1787.[6] While we find clear legislative intent to require a lesser *mens rea* than "purpose,"[7] we find no evidence of legislative intent to make the crime of kidnapping a crime of strict liability. *See State v. Ferguson*, 302 S.C. 269, 395 S.E. (2d) 182 (1990). "In the order to give effect to the purpose of the legislature, in construction of a statute a court may supply a word which is unintentionally omitted." *Gaffney v. Mallory*, 186 S.C. 337, 348, 195 S.E. 840, 845 (1938). We find that the *mens rea* of "knowledge"[8] is required under S.C. Code Ann. § 16-3-910 (1985).

## II. Jury Charge

Turning to the case at bar, Jefferies submitted four proposed jury charges to the trial judge on the element of *mens rea*. Each of the charges submitted by Jefferies contained either the element of "specific intent" or "purpose."[9] "Purpose" is the highest level of *mens rea* known in criminal law and it is not required under the South Carolina kidnapping statute. *See Bailey*, 444 U.S. at 404, 100 S.Ct. at 631, 62 L.Ed. (2d) at 587 ("purpose" first in descending hierarchical order). Because the charges requested by Jefferies on the required *mens rea* for the crime of kidnapping included a level of *mens rea* not required under S.C. Code Ann. § 16-3-

---

[6]Act No. 684, 1976 S.C. Acts 1787 is titled as follows:
"An Act To Amend Section 16-91, Code Of Laws Of South Carolina, 1962, As Amended, Relating To Kidnapping, So As To Delete The Condition Of Ransom Or Reward."

[7]"[A] person who causes a particular result is said to act purposefully if 'he consciously desires that result, whatever the likelihood of that result happening from his conduct.'" *Bailey*, 444 U.S. at 405, 100 S.Ct. at 632, 62 L.Ed. (2d) at 587.

[8]A person "is said to act knowingly if he is aware 'that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.'" *Bailey*, 444 U.S. at 405, 100 S.Ct. at 632, 62 L.Ed. (2d) at 587.

[9]As pointed out in *Bailey, supra*, "specific intent" loosely corresponds with the more modern concept of "purpose." At common law, a crime requiring "specific intent" required a higher level of *mens rea* than those requiring "general intent." *See* W. LaFave & A. Scott, *Handbook on Criminal Law* § 28 (1972).

910, the trial judge correctly refused to give the requested charges.

In charging the jury on the law of kidnapping, the trial judge read S.C. Code Ann. § 16-3-910 to the jury. He then stated as an additional element of the crime, that kidnapping required a "positive act" on the part of the defendant. Twice during deliberations, the jury requested a definition or explanation of the term "positive act." Each time the trial judge gave the jury the original charge without explanation or elaboration. Defense counsel argued to the jury that "Positive act" was: "an affirmative, positive act is one that is made with full knowledge." ROA at 498. Jefferies claims that the trial judge erred in failing to charge the jury on the element of *mens rea* and in failing to define "positive act."

The term "positive act" is the doing of a deed as opposed to leaving something undone. W. LaFave & A. Scott, *Handbook on Criminal Law* § 25 (1972). The modern definition of "positive act" does not encompass the state of mind required for criminal liability. *Id.* Other jurisdictions, however, have defined an "act" as encompassing a *mens rea.*[10]

"Criminal liability is normally based upon the concurrence of two factors, 'an evil meaning mind [and] an evil doing hand.' " *Bailey,* 444 U.S. at 402, 100 S.Ct. at 630-31, 62 L.Ed. (2d) at 586. In our view, the term "positive act" generally would not encompass the element of *mens rea;* but, because the jury in this case heard a definition of "positive act" which included "knowledge," we believe the jury

---

[10]For definition of "act," *see Black's Law Dictionary* p. 24 (5th ed. 1979) (denotes external manifestation of actor's will, expression of will or purpose). For definition of "criminal act," *see Black's Law Dictionary* p. 24 (5th ed. 1979) ("external manifestation of one's will"); *DiDonato v. Wildwood Mun. Body Corp. and Politic,* 194 N.J. Super. 83, 476 A. (2d) 297 (App. Div. 1984) (act external manifestation of actor's will); *Parrish v. State,* 97 So. (2d) 356, 359 (Fla. Dist. Ct. App. 1957) ("act" under statute is any act imminently dangerous to another and not limited to muscular movement); *Randle v. Birmingham Ry., Light & Power Co.,* 169 Ala. 314, 53 So. 918 (1910) ("act" denotes affirmative action or performance, and an expression of will or purpose); *Duncan v. Landis,* 106 F. 839 (3rd Cir. 1901) (act is result of exercise of will); *Jefferson Standard Life Ins. Co. v. Myers,* 284 S.W. 216 (Tx. Comm. App. 1926) ("act" involves exercise of will, implies intention). For definition of "positive," *see Padgett v. Missouri Motor Distributing Corp.,* 177 S.W. (2d) 490, 492 (Mo. 1944) ("positive wrong" is wrongful act wilfully committed); *Blunk v. Snider,* 111 S.W. (2d) 163, 165 (Mo. 1937) (positive conduct is willful or intentional).

charge on the element of *mens rea* as given by the trial judge was inadequate rather than totally absent as Jefferies claims.

### III. Harmless Error

The United States Supreme Court has delineated several areas which are not subject to a harmless error analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed. (2d) 302 (1991) (delineating examples); *cf. Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed. (2d) 182 (1993) (shifting burden of proof in definition of reasonable doubt); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed. (2d) 122 (1984) (right to self-representation); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. (2d) 799 (1963) (total lack of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased judge). Most recently, the Court reversed its prior holding in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed. (2d) 339 (1990), and held that a jury charge on reasonable doubt identical to the one given in *Cage, supra,* was not subject to a harmless error analysis. *Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed. (2d) 182 (1993).[11]

In *Sullivan,* the Court held a harmless error analysis could not be made "where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings." *Id.* at —, 113 S.Ct. at 2082, 124 L.Ed. (2d) at 190. In that case, the error is a "structural defect in the constitution of the trial mechanism, which [defies] analysis by 'harmless-error' standards." *Id.* at —, 113 S.Ct. at 2082, 124 L.Ed. (2d) at 190 (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed. (2d) 302 (1991)). "[C]ertain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the fact finding process at trial." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed. (2d) 674 (1986). These errors are categorized as "trial errors" rather than structural defects in the trial mechanism itself. *See Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed. (2d) 302 (1991).

---

[11]In *Victor v. Nebraska,* — U.S. —, 114 S.Ct. 1239, 127 L.Ed. (2d) 583 (1994), the United States Supreme Court held that a jury charge on reasonable doubt using the same terms as in *Cage, supra,* may be viewed in the context of the charge as a whole.

Neither *Fulminante* nor *Sullivan* addresses the inadequate jury charge on an element of the crime as exists in this case. "There is, [however], a 'strong presumption' any error can be categorized as a trial error, which may . . . be quantitatively assessed in the context of other evidence presented." *Sullivan,* — U.S. at —, 113 S.Ct. at 2083, 124 L.Ed. (2d) at 191 (Rehnquist, C.J., concurring). We believe the error here is such a "trial error" which is subject to a harmless error analysis. *Cf. Jefferies v. South Carolina,* — U.S. —, 112 S.Ct. 1464, 117 L.Ed. (2d) 611 (1992) (remanding for further consideration in light of *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991)).

The inadequate jury charge in the instant cause clearly confused the jury. The definition of "positive act" was not charged to the jury by the trial judge. Nevertheless, the jury received a definition of "positive act" from defense counsel which encompassed a *mens rea* of "knowledge." The more modern view is that "positive act" does not encompass a *mens rea.* W. LaFave & A. Scott, *HAndbook on Criminal Law* § 25 (1972); *see also* William S. McAninch and W. Gaston Fairey, *The Criminal Law of South Carolina* 21 (2d ed. 1989). The jury in this case, however, heard a definition embraced in several jurisdictions, even if not in South Carolina. Defense counsel's definition of "positive act," the trial judge's failure to adequately charge a *mens rea,* and Jefferies' defense of lack of "purpose" raised in the minds of the jurors the question of whether "purpose" was required.

Having determined the source of the jury's confusion, we must review the facts the jury actually heard and weigh those facts against the erroneous jury charge to determine what effect, if any, it had on the verdict. *Arnold v. State,* — S.C. —, 420 S.E. (2d) 834, 839 (1992) (citing *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991)), *cert. denied,* — U.S. —, 113 S.Ct. 1302, 122 L.Ed. (2d) 691 (1993). In making a harmless error analysis, our inquiry is not what would the verdict have been had the jury been given the correct charge, but rather did the erroneous charge contribute to the verdict rendered. *Sullivan,* — U.S. at —, 113 S.Ct. at 2081, 124 L.Ed. (2d) at 189.

Here the State proved beyond a reasonable doubt, and Jefferies admitted, that he knew the baby was in the automobile

within the first six-tenths of a mile. Jefferies also knew he did not have the permission of the child's parent or guardian. Nevertheless, Jefferies continued more than twenty miles after discovering the baby in the automobile before placing a four-month-old infant, attached to a heart monitor, next to a trash dumpster at the rear of a service station located in a rural area of Newberry County.

The jury heard no evidence which would tend to show Jefferies did not possess at least the *mens rea* of knowledge. Jefferies' defense was that because he did not know the baby was in the automobile before the theft, he could not have "intended" to kidnap the baby. Jefferies' claim that his sole intent was to steal the automobile is irrelevant to the later fact of his knowing the baby was in the automobile and continuing the asportation of the child against the will of the parent.[12] The jury's confusion was over an asserted defense which is, in reality, no defense under the present facts. Jefferies cannot maintain that, simply because he was ignorant of the baby's presence to begin with, that he is not responsible for kidnapping after he realized he had the baby and kept on driving.

The jury confusion over the term "positive act" clearly evidences the jury's dilemma in determining when the requisite *mens rea* must arise to sustain a guilty verdict. Had the jury believed that kidnapping was a strict liability crime, there would have been no confusion. As Jefferies admits, and the State proved beyond a reasonable doubt, he possessed the *mens rea* of knowledge when he discovered the baby in the automobile and continued the asportation against the will of the parent; therefore, beyond a reasonable doubt, the jury verdict could not have rested on the incomplete jury charge. The only definition of "positive act" heard by the jury included the *mens rea* of "knowledge." Beyond a reasonable doubt, the impermissible jury charge did not contribute to the verdict of guilty.

The decision of the Court of Appeals in *State v. Jefferies,*

[12]The Court of Appeals was correct in stating that "kidnapping is a continuing offense as long as the kidnapped person is deprived of his freedom." *State v. Jefferies,* 304 S.C. 141, 145, 403 S.E. (2d) 169, 172 (Ct. App. 1991). Even a consensual asportation, which of course is not a kidnapping, can ripen into a kidnapping when the consent is withdrawn. *See e.g. State v. Amell,* 303 Or. 355, 736 P. (2d) 561 (1987).

308 S.C. 414, 418 S.E. (2d) 339 (Ct. App. 1992) is REVERSED and the conviction reinstated.

HARWELL, C.J., CHANDLER, MOORE, JJ., and COSTA M. PLEICONES, Acting Associate Justice, concur.