10832

STATE v. AMERICAN AGRICULTURAL CHEMICAL CO.

(110 S. E. 800)

1. FISH—REFUSAL OF INSTRUCTION THAT, UNLESS DEFENDANT INTENTIONALLY CAUSED ACID TO FLOW INTO A STREAM, THEY MUST ACQUIT HIM, HELD ERROR.—In a prosecution under Cr. Code 1912, § 772, for causing acid to flow into a stream, thereby killing fish, where in defendant's plant there were two pipes, one conveying water and one carrying water and acid nearby, both embedded in cement which was broken by a falling beam, so that the acid leaked into the water pipe, a refusal of a requested instruction that unless the substance in question was intentionally caused to flow into the stream to acquit defendant was error; defendant not being guilty if the act was an accident.

2. CRIMINAL LAW—TO CONSTITUTE CRIME ACT MUST BE ACCOMPANIED BY CRIMINAL INTENT OR NEGLIGENCE REGARDED EQUIVALENT TO IN-

TENT.—In offense at common law, and under statutes which do not disclose a contrary intention, to constitute a crime, an act must be accompanied by a criminal intent, or by such negligence or indifference to a duty or to consequences as is regarded equivalent to a criminal intent.

3. CRIMINAL LAW—STATUTE MAY MAKE COMMISSION OF ACT A CRIME REGARDLESS OF INTENT OR KNOWLEDGE.—A statute may forbid doing an act and make its commission a crime regardless of the intent or knowledge of the doer.

4. CRIMINAL LAW—ACCIDENTAL COMMISSION OF FORBIDDEN ACT NOT CRIMINAL.—Although the act of the accused may have brought about a result made criminal by law, he is not responsible unless his act was accompanied by positive volition or by negligence equivalent thereto, and, if the act was an accident which presupposes that both volition and negligence were absent, he is not responsible.

Before MEMMINGER, J., Lexington, September, 1920. Reversed.

American Agricultural Chemical Co., indicted for causing a substance poisonous to fish to flow into a stream, and upon conviction appeals.

*Messrs. Lyles & Lyles,* for appellant, cite: Indictment under Sec. 722 Crim. Code 1912. *Derived from Act of 1726* (3 Stat. 270) Act of 1871 (14 Stat. 661); Rev. Stat. 1873, p. 400; Gen. Stats. 1881-2 p. 492. Sec. 1671; Crim. Code 1902, S53. 519: Intentional discharge only prohibited: 34 L. R. A. (N. S.) 286; 16 Am. Dec. 334; 92 Am. Dec. 146; 58 Am. St. Rep. 185; 16 C. J. 74; 2 McMull 502; 39 S. C., 151.

*Mr. T. C. Callison,* Solicitor, for respondent, cites: *Act applies to any stream:* 43 L. R. A. (N. S.) 401. *Absence of intent is no defense to violation of Statute:* 76 S. C., 145; 36 S. C., 497; 122 N. C., 1052; 111 N. C., 661.

February 27, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Indictment for violation of Section 772 of the Criminal Code, making it a misdemeanor to "cause to flow into or be cast" into any of the inland streams of this State any substance poisonous to fish or destructive of their spawn. The defendant was convicted and sentenced to pay a fine of $500, and from judgment and sentence has appealed.

The testimony tended to establish the following facts:

The defendant is a corporation owning and operating a plant for the manufacture of fertilizers near the town of Cayce. The plant is located near a small stream that heads upon land above the defendant, passes through its land, and thence through the lands of others to Congaree River. Prior to a previous indictment of the defendant for a similar offense, which resulted in a mistrial, the defendant had collected the water of this stream at a point above its plant and conveyed it in a pipe to the plant. The water was used for a double purpose: First, by means of a coil of lead pipe, to cool the acid in the tanks and towers. This water in the cooling process did not come in contact with the acid, but, after passing through the cooling pipes, was conveyed by an iron pipe back to the stream on the defendant's premises. Second, this water, however, was also used, occasionally, for washing out the acid tanks and towers, and thus became impregnated with a considerable amount of acid. It was ordinarily emptied into the acid tanks, where the reserve supply of acid was kept, but occasionally the tanks would overflow, and the excess would run off through the pipe carrying the cooling water, and be conveyed to the stream, where damage to fish was inflicted. After the prosecution referred to, the defendant dug three pools, into which the overflow from the acid tanks was emptied through a pipe laid very near to and parallel with the pipe which conveyed the innocuous cooling water; both pipes were laid in cement and separated from each other by

cement. During the year 1920, shortly before the prosecution was instituted, the defendant made extensive repairs upon its plant, after which complaints were received that some poisonous substance was escaping into the stream and killing the fish. Upon investigation the defendant ascertained that a heavy steel beam, which had been used in the repairs, had fallen from a scaffold and had broken the cement separating the two pipes; that the pipe carrying the water impregnated with the acid had been corroded by the acid, and that the breaking of the cement had also broken the pipe and allowed the nocuous water to find its way into the other pipe which was similarly shattered. As soon as the discovery was made the defects were remedied, a new non-corrosive pipe was installed, and no further ground of complaint appeared. There was abundant evidence tending to show—in fact, it appears to have been conceded by the defendant—that the water in the stream became contaminated with the acid from the defendant's plant, and that it was destructive to fish life.

The contention of the defendant is that the escape of the nocuous water was accidental, without negligence or design on its part, and does not constitute a crime under the section invoked by the State. It requested the presiding Judge to charge the jury:

"That the Statute in question makes the intention of the party charged with the commission of the offense in causing poisonous substance to flow into the stream an essential part of the offense. Unless the jury can find that the substance in question was intentionally caused to flow into the stream and that it was not merely an accident, they must find 'Not guilty.' "

To this request the presiding Judge responded:

"I have already charged you that that is not the law."

Other questions are involved in the appeal, but, as the refusal of this request was erroneous and demands a reversal of the judgment, our consideration will be confined to it.

Section 772 of the Criminal Code is as follows:

"Should any person or persons cause to flow into or be cast into any of the creeks, streams, or inland waters of this State, any impurities that are poisonous to fish or destructive to their spawn, such person or persons shall, upon conviction thereof, be punished with a fine of not less than five hundred dollars, or imprisonment of not less than six months in the county jail; the fine to go one-half to the informer and the other half to the county."

In offenses at common law, and under Statutes which do not disclose a contrary legislative purpose, to constitute a crime, the act must be accompanied by a criminal intent, or by such negligence or indifference to a duty or to consequences as is regarded by the law as equivalent to a criminal intent. The Statute, however, may forbid the doing of an act, and make its commission a crime, regardless of the intent or knowledge of the doer, and, if such legislative intention appears, the Court must give it effect, although the intent of the doer may have been innocent: 16 C. J., 74, 76; *State v. Reeder*, 36 S. C., 497; 15 S. E., 544; *State v. Assmann*, 46 S. C., 564; 24 S. E., 673; *State v. Westmoreland*, 76 S. C., 145; 56 S. E., 673; 8 L. R. A. (N. S.), 842.

This principle must not be confounded with or deemed decisive of the very distinct inquiry whether or not the accused has in fact exercised his personal volition or been negligent in committing the offense with which he may be charged. His act may in a remote sense be said to have caused, brought about, the result complained of, but in reason he cannot be held criminally responsible, unless his act was accompanied either by positive

volition on his part, or by negligence equivalent in law thereto. If the act was an accident, which presupposes that both volition and negligence were absent, there is no basis for criminal responsibility.

In the statutory offenses where the State is not required to prove a criminal intent on the part of the accused it is assumed, as fully appears, that the act was one of volition, and the defense that he did not intend to commit an unlawful act is not open to him.

If one should do an act intentionally, the act is the result of his personal volition; and, if it should be an act prohibited by statute, he will not be heard to say that he did not intend to commit a crime in so doing. But, if it occurred by accident, his volition could not have preceded the act, and both the intention to do the act and the intention to commit a crime are necessarily absent. To constitute a crime the personal volition or negligence of the actor preceding the act is essential. Whether or not the exculpatory defense that in so exercising his volition there was no criminal intent will avail him depends upon whether the defense was at common law, where the criminal intent is essential, or under a statute where it is not.

There was evidence in the case which would have warranted the jury in concluding that the fall of the heavy steel beam, fracturing the pipes and the enveloping cement, which permitted the nocuous water to make its way through the other pipe to the stream, was an accident pure and simple. The defendant was therefore entitled to the request based upon this hypothesis, which, if established, necessarily freed the defendant from criminal responsibility.
necessarily freed the defendant from criminal responsibility.

On the other hand, the jury might have concluded from the evidence that the defendant was negligent in allowing the steel beam to fall, or in not providing in the first instance the non-corrosive pipe or conduit that was afterwards installed, or in not sooner discovering the breaks in the ce-

ment and pipes, or in not promptly repairing the breaks, or in not adopting a different method of controlling the water charged with acid. In any of these events, the escape of the water through the negligence of the defendant would have constituted the defendant the author of the wrong by which the deleterious substance was "caused to flow into or be cast into" the stream, and fixed criminality upon it.

But the refusal to charge as requested and the charge in opposition thereto permitted the jury to convict the defendant upon either the theory of accident or of negligence.

If this had been a civil suit for damages by one injured by the escape of the nocuous water, and it had appeared that the escape was due to an accident, without volition or negligence on the part of the defendant, there could have been no civil liability; and, even if nothing else had appeared than that the hoisting apparatus used in raising the steel beam had given way in the ordinary use of it, causing the beam to fall and shatter the pipes, negligence could not have been imputed, under the Green Case, *72* S. C., *401*, *52* S. E., *45*, from that simple fact. It would be remarkable to hold the defendant to criminal responsibility and relieve it from civil liability upon the identical facts.

The judicial conclusion that an act was an accident is a positive negation of the existence of personal volition or negligence on the part of the alleged perpetrator.

"It has long been recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident." *20* R. C. L. *17*, citing cases from many jurisdictions.

"No liability attaches where the injury results from what is termed pure or inevitable accident. Negligence can never be consistently predicated of a purely accidental occurrence." *29* Cyc. *440*.

Involuntary manslaughter may be predicated upon an unintentional killing, but only where the offense was ac-

companied by such circumstances of gross negligence as in law are equivalent to intent.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

CHIEF JUSTICE GARY concurs.

MR. CHAS. CARROLL SIMMS, Acting Associate Justice, (concurring):

The charge against the defendant depends upon the construction of the words "cause to flow into or be cast" poisonous substances into the streams of the State. No question of intent is involved. If the defendant caused the destructive agencies to "flow into or be cast," it is guilty under the statue. The question, therefore, is: Did the defendant cause or procure the substantive act to be committed, or was the act committed under such circumstances of recklessness or carelessness or otherwise for which the defendant would be responsible? To cause or procure an act to be done presupposes in a defendant a knowledge of that fact. It must have known, or had reason to know, that the act out of which the offense arose had been committed by it in order to be convicted of causing the act. The defendant must have been conscious or sufficiently charged with a consciousness to have caused the act. Hence the question of intention, which could not relieve it of responsibility, does not enter into the case. A defendant may not be guilty of intent, but be guilty of a violation of a Statute, where he consciously does an act which is forbidden by law, but he must know, or have reason to know, that he has committed the act. As stated by the presiding Judge, there are Statutes the violation of which cannot be excused for lack of intent. If a party has burglar tools in his possession, he is guilty, but only upon a presupposition that he knew that he had the tools. If he did not know of the possession of the tools, he could not be guilty.

A party transporting drugs or ardent spirits would be guilty whatever his intent, but he must be conscious of the fact that the things transported were drugs or liquors. If they were contained so as to give him no information as to their character, and he knew not that they were liquors or drugs, although he was transporting them, he could not be guilty, because he was not conscious that the things transported were of that character, however guilty he might be, without intention of violating a Statute, if he did know the nature of the goods in his possession. The defendant here to be guilty must have consciously known that the substantive act had been caused or procured to be done by it. It was a proper question in the case to which the defendant was entitled to an instruction to the jury from the Court. The exceptions on this line may be rather obscure, but are sufficiently clear to indicate that the jury was not instructed upon the line indicated in this opinion.

I therefore concur with the Chief Justice in the opinion of Mr. Justice Cothran that, for the reasons herein given, the judgment below be reversed, and a new trial ordered.

MR. JUSTICE WATTS: I dissent. I see no error on the part of the Circuit Judge. The act is plain, and the defendant guilty. The defendant should have kept its plant in proper repair so that the act could not have been committed. If defendant is to be excused because the act was an accident, no defendant could ever be convicted. All their acts would be accidental. Might as well excuse the owner of a vicious animal that escapes and does injury for want of proper repairs in a fence or house, and claims that it was an accident. The defense should only appeal to the Court in mitigation of sentence.

MR. JUSTICE FRASER (dissenting): I concur in the result with Mr. Justice Watts. A Judge is not bound to amend a request to charge. To say the least of it, the

request to charge was very misleading. It provided for two conditions—one where the defendant put deleterious matter into the stream intentionally, that is, willfully and deliberately; the other where it was an accident pure and simple. In the latter case the defendant did not do it. It is conceded that, if the deleterious matter went into the stream through the negligence of the defendant, then the defendant is liable. The request to charge did not provide for a negligent act, and therefore the Judge could not charge it. If Judge Memminger had charged as requested, the jury might well have inferred that, if the defendant did not intend to put the deleterious matter in the stream, then in law it was an accident.

I do not see a word in the Statute that confines the prohibition to intentional acts. To interpolate the word "intentionally" is to amend the Statute, and his Honor had no right to amend the Statute.