23259

The STATE, Respondent v. Devon Wayne FERGUSON, Appellant.
(395 S.E. (2d) 182)

Supreme Court

---

*Daniel T. Stacey* and *Robert M. Pachak* of the *South Carolina Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Amie L. Clifford*, Columbia; and *Sol. G. Gordon McBride*, Hartsville, *for respondent.*

Heard May 31, 1990.

Decided Aug. 27, 1990.

TOAL, Justice:

Devon W. Ferguson appeals his convictions for distribution of cocaine, for which he was sentenced to fifteen (15) years imprisonment; offering bribes to police officers, for which he was sentenced to two (2) years imprisonment; and distribu-

tion of a controlled substance within close proximity of a school, for which he was sentenced to a concurrent sentence of ten (10) years imprisonment. We affirm.

## FACTS

On November 3, 1988, deputy sheriff Douglas Pernell of Dillon County phoned an individual known as the "Fatman" (an unidentified co-conspirator with the appellant) concerning the receipt of bribes in exchange for illegal police protection. The "Fatman" told Pernell that Ferguson (a.k.a. "Dino") would deliver the bribe monies. Pernell then spoke with Ferguson, who informed Pernell that he needed more time to come up with the requisite amount of money and that Pernell should come back later. Implicitly, Ferguson then changed his mind and offered to bring Pernell $250.00 in cash and a quantity of cocaine instead of the usual $500.00 cash amount.[1]

Ferguson met with Pernell approximately ten minutes later at a post office, bringing him a shoe polish box containing $250.00 and a bag of cocaine. Two SLED officers witnessed the transaction. Upon giving Pernell the box, Ferguson said, "It's all there." (Tr. 6, 1.3).

## LAW/ANALYSIS

Ferguson argues that the trial court committed two charging errors warranting reversal. He complains that, as to both the bribery offense and the distribution of cocaine offense, the trial court failed to properly charge the jury on the required criminal intent, or mental state of the defendant. Ferguson bases his arguments on the basic premise in criminal law that ordinarily, in order to establish criminal liability, a criminal intent of some form is required. This premise is rooted in the maxim *actus non facit reum nisi mens sit rea*.[2] For example, the mental state required to be proven by the State for a particular crime might be purpose (intent), knowledge, recklessness, or criminal negligence. Of course, the legislature, if it so chooses, may make an act or

[1] Ferguson had, according to Pernell, already delivered one $500.00 payment in October of 1988.

[2] Meaning, "An act does not make [the doer of it] guilty, unless the mind be guilty; that is, unless the intention be criminal." BLACK'S LAW DICTIONARY 34 (5th ed. 1979).

omission a crime regardless of fault. *See State v. American Agricultural Chem. Co.*, 118 S.C. 333, 110 S.E. 800 (1922). These crimes are referred to commonly as "strict liability" offenses. Whether an offense is a strict liability offense, and if not, what kind of criminal intent is required to satisfactorily show a commission of that offense, are questions of legislative intent. *Id.*

■   As for the bribery charge, we simply disagree with Ferguson's contention. The trial court charged the jury, in pertinent part:

> Thirdly, the defendant is charged with violating a statute which reads 'whoever corruptly gives to any officer, including police officers, any gift, or gratuity *with the intent to influence* such officer's act or judgment on any matter which is pending before him shall be guilty of an offense.'[3] Corruptly, when used in that statute, simply means dishonestly. It means an effort to procure dishonest activities of the person to whom the gratuity or gift is offered to get him to fail to perform his duties in whatever office he is holding and whatever duty he is required to exercise.

(Emphasis added.) Tr. 45, 11.1-12). We hold that the jury was adequately instructed as to the mental state required for the bribery offense.

■   We agree that the trial court committed error, however, in ruling, in effect, that there is no mental state required for the offense of distribution of cocaine. We held in *State v. American Agricultural Chem. Co.*, 118 S.C. 333, 337, 110 S.E. 800 (1922) that:

> In offenses at common law, and under statutes which do not disclose a contrary legislative purpose, to constitute a crime, the act must be accompanied by a criminal intent, or by such negligence or indifference to duty or to consequences as is regarded by the law as equivalent to a criminal intent.

A reading of the entire statutory scheme convinces us that the legislature intended to place a mental state requirement

---

[3] This part of the charge is a paraphrase of S.C. Code Ann. § 16-9-210 (1985).

in the offense contained in S.C. Code Ann. § 44-53-370(a) (1985).[4]

Having held that the legislature did not intend this serious offense to be a strict liability crime, we now turn to what kind of mental state is required to be proven in order to show a violation of § 44-53-370(a). We are guided in this decision by our ruling in *State v. Freeland,* 106 S.C. 220, 91 S.E. 3 (1916). In *Freeland,* the alleged offense was illicit possession of cocaine. No mental state requirement was mentioned in the statute. The trial court instructed the jury that, if the defendant did not know that she had cocaine in her possession, she should be acquitted. This Court held, regarding an attack on this charge:

> [t]he instruction was really too favorable to defendant, in that it did not eliminate the possibility of willful or negligent want of knowledge. If she was culpably ignorant of the fact, her ignorance would not excuse her.

106 S.C. at 223, 91 S.E. 3. The instant case is therefore controlled, in our view, by *Freeland.* Hence, the State must show that a given defendant was at least criminally negligent when he/she manufactured, distributed, or dispensed a controlled substance in order to prove a violation of § 44-53-370(a).

Nevertheless, although we find error, we hold that such was harmless in this case, in light of the overwhelming evidence that Ferguson was well aware that he was distributing cocaine. *State v. Mitchell,* 286 S.C. 572, 336 S.E. (2d) 150 (1985). For instance, Ferguson specifically told Pernell, "I've got $250.00 and the white stuff" when setting up their rendezvous at the post office. (Tr. 15, 1.14). Ten minutes later, Ferguson then delivered a shoe polish box to Pernell at the post office containing $250 cash and a quantity of cocaine with $250 written on it. Under these circumstances, it strains credulity past the breaking point to adhere to Ferguson's theory that he was just an honest delivery man with no knowledge or reason to know he was distributing cocaine.

---

[4] South Carolina Code Ann. § 44-53-370(a) (1985) reads, in pertinent part:

> [I]t shall be unlawful for any person: (a) to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

Accordingly, the judgment of the lower court is

Affirmed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.