584 S.E.2d 432

**The STATE, Respondent,**

v.

**Carlos Miguel GILL, Appellant.**

No. 3656.

Court of Appeals of South Carolina.

Heard April 10, 2003.

Decided June 23, 2003.

Rehearing Denied Aug. 22, 2003.

---

236

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

PER CURIAM:

Carlos M. Gill appeals his convictions for distribution of crack cocaine, distribution of crack cocaine within proximity of a school, and conspiracy to distribute crack cocaine. He argues the trial court (1) lacked subject matter jurisdiction on two of the charges because the indictments failed to allege that he "knowingly" committed the offenses and (2) erred in

finding he waived his right to have an attorney represent him at trial. We affirm.

## BACKGROUND

Undercover police officer William Graham, accompanied by Cora Lee Neil, an acquaintance of Gill's, made a controlled purchase of $40 worth of crack cocaine from Gill. The purchase was video and audio taped and occurred approximately 670 feet from an elementary school. Gill was not represented by counsel at trial. He was convicted as charged, sentenced to twenty-five years imprisonment and a $50,000 fine for distribution of crack cocaine; fifteen years and a $10,000 fine for distribution within proximity of a school; and five years for conspiracy, with all sentences to run concurrently.

## LAW/ANALYSIS

### I. SUBJECT MATTER JURISDICTION

Gill argues the trial court lacked subject matter jurisdiction to try him on the charges of distribution and distribution within the proximity of a school because the indictments failed to allege he "knowingly" committed the acts. We disagree.

Gill's indictment for distribution of crack cocaine alleged that he "did distribute, dispense, or deliver a quantity of crack cocaine ... or did otherwise aid, abet, attempt, or conspire to distribute, dispense, or deliver crack cocaine, all in violation of Section 44–53–375...." Section 44–53–375 of the South Carolina Code provides that "[a] person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver ice, crank, or crack cocaine, in violation of the provisions of Section 44–53–370, is guilty of a felony." S.C.Code Ann. § 44–53–375(B) (2002).

The indictment for distribution within proximity of a school provided that Gill "did unlawfully distribute a controlled substance, ... to wit: crack cocaine, within a one-half mile radius of the grounds of York One Academy, a public school located in the city of York, South Carolina, ... all in violation of Section 44–53–445...." Section 44–53–445 of the South Car-

olina Code provides it is a separate criminal offense to "distribute, sell, purchase, manufacture, or to unlawfully possess with intent to distribute, a controlled substance while in, on, or within a one-half mile radius of the grounds of a public or private elementary, middle, or secondary school...." S.C.Code Ann. § 44–53–445(A) (2002).

Questions regarding subject matter jurisdiction may be raised at any time. *Carter v. State,* 329 S.C. 355, 362, 495 S.E.2d 773, 777 (1998); *State v. Williams,* 346 S.C. 424, 431, 552 S.E.2d 54, 58 (Ct.App.2001). A trial court acquires subject matter jurisdiction over a criminal matter where "there is an indictment which sufficiently states the offense, the defendant waives presentment, or the offense is a lesser included offense of the crime charged in the indictment." *State v. Primus,* 349 S.C. 576, 579, 564 S.E.2d 103, 105 (2002); *State v. Lynch,* 344 S.C. 635, 639, 545 S.E.2d 511, 513 (2001); *Carter,* 329 S.C. at 362, 495 S.E.2d at 777.

> An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.

*Browning v. State,* 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995) (citations omitted); *Williams,* 346 S.C. at 431–32, 552 S.E.2d at 58; S.C.Code Ann. § 17–19–20 (2003).

The key question in the underlying case is whether the mens rea element of the crime of distribution of crack cocaine must be alleged in the indictment to confer subject matter jurisdiction. In *State v. Ferguson,* 302 S.C. 269, 395 S.E.2d 182 (1990), our supreme court considered whether a trial court erred in charging the jury regarding the mental state necessary to be proved for conviction of certain crimes. The *Ferguson* court noted that the required mental state to be proven by the State on a certain offense may include purpose or knowledge. *Id.* at 271, 395 S.E.2d at 183. The court then

noted the legislature could make an act or omission a crime "regardless of fault," or could make a particular crime a strict liability crime. *Id.* at 271–72, 395 S.E.2d at 183. Reviewing the trial court's jury instructions regarding the mental element of distribution of cocaine and the legislative intent behind section 44–53–370, the court held distribution was not a strict liability crime and the State was required to prove the defendant was at least criminally negligent. *Id.* at 272–73, 395 S.E.2d at 184.

Two recent cases have also discussed the elements of distribution of crack cocaine. In *State v. Watts,* 321 S.C. 158, 467 S.E.2d 272 (Ct.App.1996), this court reviewed whether a variance in the proof and the allegations in an indictment for distribution of crack cocaine warranted a directed verdict in favor of the defendant. We noted as follows:

The essential elements of the offense of distribution of crack cocaine which the court charged the jury the State was required to prove were: (1) Watts had actual control, or the right to exercise control over the crack cocaine; (2) he knowingly distributed or delivered the crack cocaine; (3) the substance upon analysis was, in fact, crack cocaine; and (4) the offense occurred in Greenwood County. *See* S.C.Code Ann. § 44–53–375 (Supp.1994). The charge of distribution of crack cocaine within one-half mile of a school required the same proof with an additional element that the distribution occurred within a one-half mile radius of the grounds of an elementary, middle, or secondary school. *See* S.C.Code Ann. § 44–53–445 (Supp.1994).

*Id.* at 168, 467 S.E.2d at 278. Because the indictment in *Watts* listed the wrong accomplice, but the State submitted proof regarding the correct accomplice and all elements of the crime, we held there was no material variance, the listed co-defendant was mere surplusage, and the defendant was not entitled to a directed verdict. *Id.*

More recently in *Brown v. State,* 343 S.C. 342, 540 S.E.2d 846 (2001), our state supreme court addressed whether the trial court lacked subject matter jurisdiction over a charge of distribution within proximity of a school where the indictment alleged the distribution occurred near a daycare center. The court noted:

> To prove distribution of crack cocaine under [S.C.Code Ann. § 44–53–445 (Supp.1992)], the State must establish the following elements: (1) the defendant had actual control, or the right to exercise control over the crack cocaine; (2) he knowingly distributed or delivered the crack cocaine; (3) the substance upon analysis was, in fact, crack cocaine; and (4) the distribution occurred within a one-half mile radius of the grounds of an elementary, middle, secondary or vocational school; public playground or park; or college or university. *See id.; State v. Watts,* 321 S.C. 158, 168, 467 S.E.2d 272, 278 (Ct.App.1996).

*Id.* at 347–48, 540 S.E.2d at 849. Because daycare centers were not listed in the statute by the legislature, our supreme court held the indictment failed to include a necessary element of the offense and the trial court did not have jurisdiction over the matter. *Id.* at 349–50, 540 S.E.2d at 850.

■ In the underlying case, Gill's indictment for distribution alleged that on February 1, 2000, he distributed crack cocaine or aided, abetted, attempted or conspired to distribute crack cocaine in violation of Section 44–53–375. His indictment for the proximity charge alleged Gill distributed crack cocaine within a one-half mile radius of York One Academy, a South Carolina public school, in violation of Section 44–53–445 on the same date. Both indictments listed the elements of the crime found in the respective statutes. The indictments sufficiently informed Gill he had to defend against charges of distribution of crack cocaine and distribution near York One Academy on February 1, 2000. Clearly, the indictments were sufficient to inform Gill about the charges he faced and what he must defend against.

With regard to Gill's allegations that the indictments must allege that he "knowingly" distributed the drugs, we note neither Section 44–53–375 nor Section 44–53–445 includes "knowingly" as an element of the crime. Although *Ferguson, Watts,* and *Brown* list "knowingly" as an element the State must prove for the crime of distribution, none of these cases addressed whether the "knowingly" element must be alleged in the indictment in order to convey subject matter jurisdiction. Upon closer scrutiny, we find they can be read to mean that "knowingly" is merely an element the State must prove to obtain a conviction. If the General Assembly intended a mens

rea element in the crimes of distribution and distribution within proximity of a school to be necessary to convey jurisdiction, the requirement would have been listed in the statute. Accordingly, reading the indictments and statutes as a whole, we find the indictments contained the elements necessary to convey jurisdiction, and Gill was sufficiently apprised of the crimes against him.

## II.  WAIVER OF ATTORNEY

Gill argues the trial court erred in finding he waived his right to an attorney and in failing to inquire whether he qualified for a public defender.  We disagree.

Gill applied for appointment of a public defender on April 17, 2000, while he was free on bond for the underlying charges.  Because Gill was gainfully employed at the time, he was rejected as non-indigent.  Gill repeatedly assured the assistant solicitor that he intended to hire a private attorney, but failed to do so.  Gill also failed to appear for a court date and was incarcerated pursuant to a bench warrant on July 26, 2000.

On August 11, 2000, a hearing was held before the trial court concerning Gill's lack of representation.  The assistant solicitor stated she wanted an attorney on the other side of the case and informed the court that she had encouraged Gill to fill out another application for a public defender.  The trial judge informed Gill that his trial date was August 21, 2000, and inquired whether Gill would like to apply for a public defender.  The following exchange then occurred:

Mr. Gill: My girlfriend, I had a visit yesterday.  Hopefully, everything going all right.  She was supposed to meet with him today. I told [Assistant Solicitor] I would get back with her sometime and let her know.  I supposed to be getting Stacy Lewis, so when I call her today, I'll know something for sure.

The Court: All right.  You're up for trial with or without an attorney the week of the twenty-first of this month. We're not going to put off the trial for you to get a lawyer. You've either got to get one or—you haven't applied for a public defender, so, we can't appoint you one.  But we can't

keep rocking along without a trial being disposed of. Do you understand that?

Mr. Gill: Yes sir.

The Court: Do you have any questions?

Mr. Gill: No sir.

Because the State was trying other cases, Gill's case was not called the week of August 21, 2000. Gill requested a hearing before the trial judge on August 24, 2000, to discuss whether the bench warrant against him should have been issued. During the hearing, the assistant solicitor expressed her concern that Gill still did not have representation. Gill told the trial judge he had $800 of the $1,000 needed to retain Stacy Lewis as an attorney, but he could not earn the remaining money if the trial judge did not allow him out on bond so he could return to work. The trial court refused to withdraw the bench warrant and free Gill.

Gill's trial began September 12, 2000. Before the trial began, Gill informed the trial judge that the assistant solicitor prevented him from getting an attorney, even though Gill's family had the money to pay Lewis. The trial judge called attorney Lewis on the speaker telephone to determine whether Gill had actually retained his services. Lewis denied that he represented Gill. He explained that Gill's girlfriend was supposed to bring a retainer fee by 3:00 the previous afternoon, but she failed to do so until after 3:30, when Lewis had left the office. Lewis stated he had "had it with them," and admitted the assistant solicitor informed him the trial judge would not likely grant a continuance in the case because Gill had been informed to be prepared for trial with or without an attorney. Noting that Gill had "plenty of time" in which to retain counsel, the trial judge informed Gill that his trial would proceed without an attorney, finding as follows:

I find that the Court and the solicitor's office both ha[ve] done all possible to assist and urge Mr. Gill to obtain counsel and he has not so done. I find no showing why he has not retained counsel other than he just hadn't chose[n] to pay him according to what Mr. Lewis' comments were, so

I find that he has waived his right to counsel and he is to proceed to trial without an attorney.

During the trial, the court further noted that:

The court has after due deliberation prior to commencing the trial made a conscious decision not to appoint the public defender or anyone else to assist Mr. Gill as is sometimes done in cases of this type. The court did not want to put counsel in that position and the court finds there is no way any counsel could be prepared to do, to appoint counsel under these circumstances is somewhat inconsistent with finding that Mr. Gill has waived his right to counsel.

Gill complained that he was being denied his rights, that he needed an attorney, and that his family had the money to hire one for him.

The court proceeded with the trial. Gill continued to protest his lack of representation and refused to participate in jury selection or opening statements. After Gill questioned the judge regarding his rights, the judge informed the jury that Gill was given the right to get an attorney. Gill continued to object that his rights had been violated and he had not been given an attorney throughout the trial. At one point, Gill interrupted Neil's testimony to state that she smokes crack. He then complained the court was "railroading" him because the court failed to appoint a public defender to defend him, and he requested to be taken out of the courtroom into the holding cell. The judge allowed Gill to be taken to the holding cell, and he admonished the jury not to consider his absence against him in any manner. The trial continued with the State calling three more witnesses while Gill was in the holding cell. After the State rested, Gill was brought back into the courtroom and chose not to present any evidence. During his closing argument, Gill continued to complain that the court had "taken" all his rights away by preventing him from getting an attorney, despite the fact that his family had the money to hire one.

■■■ The Sixth Amendment guarantees criminal defendants a right to counsel. U.S. Const. amend. VI.; *Stevenson v. State*, 337 S.C. 23, 26, 522 S.E.2d 343, 344 (1999). This right may be waived. *State v. Fuller*, 337 S.C. 236, 241, 523 S.E.2d 168, 170 (1999). A waiver may be inferred from the

defendant's actions. *State v. Cain*, 277 S.C. 210, 210–11, 284 S.E.2d 779 (1981).

In *State v. Jacobs*, our supreme court considered whether a criminal defendant waived his right to counsel through his conduct rather than by express waiver. *Jacobs*, 271 S.C. 126, 245 S.E.2d 606 (1978). In that case, Ray Jacobs surrendered himself on May 23, 1977, pursuant to an arrest warrant for possession and sale of marijuana. The trial court found him non-indigent and advised him to hire an attorney. On several occasions, the court urged Jacobs to retain counsel and continued the case at least once because Jacobs had not yet done so. At one point prior to trial, Jacobs informed the court he had counsel, but the record did not reveal the accuracy of this claim. Jacobs' trial was held on June 2. Jacobs appeared without counsel, but informed the court that his brother was supposed to bring counsel and that he had been waiting on him to make the arrangements. The court offered to get the attorney into court, but Jacobs did not provide a name or a time when he expected to have retained counsel. The court then ruled Jacobs had waived his right to counsel and asked a public defender to sit with him to offer advice and assistance. *Id.* at 127, 245 S.E.2d at 607. On appeal, our supreme court held Jacobs had been granted "a reasonable time in which to retain counsel and ... did not make a sufficient showing of reasons for his failure to have counsel present." *Id.* at 128, 245 S.E.2d at 608. Thus, the court reasoned, Jacobs had, "by his conduct" waived his right to counsel. *Id.* Therefore, the court refused to consider the adequacy of the assistance provided him by the public defender who sat with him during the trial. *Id.*

In *State v. Cain*, Larry Cain was tried *in absentia* and without counsel for driving under the influence, third offense. *Cain*, 277 S.C. 210, 284 S.E.2d 779 (1981). On appeal from his conviction, Cain argued the trial court could not infer a valid waiver of his right to counsel by his failure to appear at trial. Our supreme court disagreed, noting Cain was released on a general appearance bond and was represented by counsel at a preliminary hearing and that both Cain and his counsel knew about the upcoming trial, but failed to appear. *Id.* at 210–11, 284 S.E.2d at 779. The court held Cain's waiver of counsel was inferable by his failure to fulfill his appearance bond

conditions and his failure to keep in contact with his counsel. *Id.*

In the present case, Gill repeatedly assured the trial judge that either he or his family had the money to retain counsel. Even when the trial judge inquired whether he wanted to apply for a public defender, Gill continued to claim that he intended to hire private counsel. At two pre-trial hearings, the State and the trial court discussed their concerns regarding Gill's lack of counsel. However, between Gill's April 17, 2000 arrest and his September 2000 trial, Gill failed to obtain counsel. Although Gill never expressly waived his right to counsel, the trial court found it did all it could to urge Gill to obtain counsel. Gill was allowed a reasonable time in which to hire counsel. Based on Gill's actions, we find a waiver of counsel may be inferred. *Id.; Jacobs*, 271 S.C. at 128, 245 S.E.2d at 608.

**AFFIRMED.**

STILWELL and HOWARD, JJ., and STROM, Acting Judge, concur.