# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Justin Adams, Appellant.

Appellate Case No. 2017-001018

———————————

Appeal From Beaufort County
Brooks P. Goldsmith, Circuit Court Judge

———————————

Opinion No. 5728
Heard March 18, 2020 – Filed May 20, 2020

———————————

**AFFIRMED**

———————————

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia, and Solicitor Isaac McDuffie Stone, III, of
Bluffton, all for Respondent.

———————————

**HILL, J.:** Justin Adams appeals his conviction of first-degree criminal sexual
conduct (CSC) with a minor, arguing the trial court erred in (1) denying his motion
to exclude the victim's testimony and out-of-court interviews; (2) refusing to charge
the jury on criminal intent; (3) refusing to charge the jury it had to be unanimous as
to the specific act of sexual battery he committed; and (4) denying his motion for a
new trial based on victim's mother's alleged violation of a sequestration order. We
affirm.

# I. Facts

In December 2013, victim disclosed to his maternal grandmother that Adams, his mother's fiancé, had touched him inappropriately. The grandmother called 911, and later that same day, Lieutenant Babkiewicz of the Bluffton Police Department met with and interviewed victim, who was then five years old. During the interview, which was video recorded, Babkiewicz told victim he wanted to be his "buddy"; made victim a junior officer and pinned a sticker badge on him; told victim his mother and others were watching the interview and the interview room had magical powers that would "zap" victim if he did not tell the truth (though he later assured victim he was joking); and gifted victim several stuffed animals. During the interview, victim alleged Adams had massaged his penis in the shower, placed his finger in victim's "butt," and placed his penis in victim's mouth.

The police referred victim to professional counselor Mary Beth Hefner, who interviewed victim four days after Babkiewicz. Victim recounted the alleged incidents, stating Adams had digitally penetrated victim's anus, massaged victim's penis, and performed oral sex with victim.

Adams was indicted for first-degree CSC with a minor. The indictment alleged that in 2013, Adams "did commit a sexual battery upon a minor who was less than eleven years of age, to wit: fellatio and/or digital intrusion of the victim's anal opening." Before his trial began, Adams sought to exclude victim's testimony and recorded interviews from evidence, contending victim's reliability had been removed by Babkiewicz's overbearing techniques. After a pretrial hearing that included testimony by Babkiewicz and Hefner, the trial court denied Adams' motion.

Babkiewicz and Hefner testified at trial, and their interviews of victim were played to the jury. The State also called grandmother, who relayed the disclosure. Victim's mother testified she worked a nighttime shift, and due to her work schedule, Adams and victim started taking showers together. There were times when Adams and victim were showering when she noticed the bathroom door had been locked. She also recalled victim once came out of the shower with an erect penis, and Adams acted strange and evasive when she asked about it. Victim, who was eight by the time of trial, testified that he would bathe with Adams, who would touch victim's penis and anal area. Victim did not, however, testify as to any oral sex.

Adams did not present evidence. After thorough inquiry, the trial court denied his request to charge the jury that they "must unanimously agree as to the exact act committed by the Defendant in violation of the statute before you can return a guilty

verdict." The trial court also refused Adams' request to instruct the jury on criminal intent. The jury deliberated a little over an hour-and-a-half and found Adams guilty. Adams later moved for a new trial on the ground of after-discovered evidence, claiming victim's mother violated the consent sequestration order by attempting to listen to the trial through a courtroom door. After the trial court denied Adams a new trial, he filed this appeal.

## II. <u>Admissibility of Victim's Testimony and Interviews</u>

We begin with Adams' claim that Babkiewicz's conduct destroyed victim's reliability, and the trial court therefore erred by not excluding victim's statements and testimony from evidence. Due process prevents the State from using evidence so unreliable it offends fundamental conceptions of justice and ordered liberty. *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). Subject to the reliability check due process guarantees, evidence rules, common law rules, and statutes govern the admissibility of evidence, and the jury determines the credibility of admitted evidence. *Id.* Our rules of evidence deem hearsay inadmissible, subject to exceptions. *See* Rule 802, SCRE. Section 17-23-175 of the South Carolina Code (2014) carved out an exception to the hearsay rule in CSC cases that allows admissibility of an out-of-court statement of a child victim who was under twelve years old at the time the statement was made if: (1) the statement was made during an investigative interview, (2) the statement was preserved by an audio or video recording, (3) the child testifies at trial and is subject to cross-examination on the offense and the making of the statement, and (4) the court finds "in a hearing conducted outside the presence of the jury, that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness." § 17-23-175(A), (C). In determining if a statement has "particularized guarantees of trustworthiness," the trial court may consider whether (1) the statement was obtained through leading questions, (2) the interviewer is trained to interview children, (3) the statement constitutes "a detailed account of the alleged offense," (4) the statement is coherent, and (5) "sworn testimony of any participant which may be determined as necessary by the court." § 17-23-175(B).

Adams models his challenge to the victim's reliability on *State v. Michaels*, 642 A.2d 1372, 1379–80 (N.J. 1994), where a day care worker appealed her convictions of numerous counts of child sexual assault and abuse. The New Jersey Supreme Court found the repeated interviews of the thirty-four children so coercive as to risk the reliability of the testimony they produced. The untrained interviewers used practices disfavored by experts, lacked impartiality and objectivity, and interviewed the children repeatedly over the course of several years. *Id.* at 1380. The interviewers

employed blatantly suggestive and improper techniques, including threats, bribes, and making the children junior detectives. *Id*. at 1379–80. The court determined that to safeguard the defendant's right to a fair trial, a pre-trial taint hearing needed to be held to decide if the interviews "so infected the ability of the children to recall the alleged abusive events that their pretrial statements and in-court testimony based on that recollection are unreliable and should not be admitted into evidence." *Id*. at 1380.

We conclude the reliability concerns Adams raises based on *Michaels* were satisfied here by the witness competency standard and within the framework of § 17-23-175, which in essence requires a pre-trial taint hearing. The thoughtful trial court held such a hearing, applied the criteria of the statute to the evidence, and its ruling admitting the interviews and testimony reflects sound discretion. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25–26, 609 S.E.2d 506, 509 (2005) (evidentiary rulings will not be disturbed on appeal absent abuse of discretion).

Victim's interview with Hefner was admissible pursuant to § 17-23-175 because it was video recorded, victim testified at trial subject to cross-examination, and the circumstances of the interview provided particularized guarantees of trustworthiness. Hefner was trained to interview children, and she did not ask leading questions. Victim gave a detailed and coherent account of the alleged offenses, specifying Adams touched his "wacker" and put his finger in victim's anus while in the bathroom.

Victim's interview with Babkiewicz likewise met the § 17-23-175 standards. Victim provided a detailed and coherent account of the alleged offense. We acknowledge Babkiewicz's lack of training in interviewing children and his dubious techniques, but the interview was not inherently unreliable. For example, victim's initial statement to Babkiewicz about Adams touching his "wacker" was not made in response to a leading question.

We also find victim, who was eight at the time of trial, was competent to testify despite his young age because he could express himself in a way the jury could understand, and he understood the concept of the truth and his duty to tell the truth. *See* Rule 601(A), SCRE ("Every person is competent to be a witness except as otherwise provided by statute or these rules."); Rule 601(B), SCRE (providing a person is not competent to be a witness if a court decides "(1) the proposed witness is incapable of expressing himself concerning the matter as to be understood by the judge and jury . . . or (2) the proposed witness is incapable of understanding the duty of a witness to tell the truth"); *see also State v. Lambert*, 276 S.C. 398, 401, 279

S.E.2d 364, 365 (1981) ("[T]here is no fixed age an individual must attain in order to be a competent witness."). Therefore, we find the court properly admitted victim's testimony at trial, where the jury was able to gauge victim's credibility in light of Adams' counsel's thorough airing of Babkiewicz's questionable methods.

### III.    Criminal Intent and § 16-3-655(A)

Adams next claims the trial court erred by not instructing the jury that criminal intent was an element of the offense of CSC with a minor in the first-degree, S.C. Code Ann. § 16-3-655 (2015). In requesting the intent charge, Adams pointed out the definition of "sexual battery" as used in the statute includes "any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C. Code Ann. § 16-3-651(h) (2015). He contends this definition could subject a parent or other person to prosecution even when the intrusion occurred accidentally, such as while a parent is bathing a minor child. Adams' intent was never an issue at his trial. His defense was denial, and a challenge to the reliability of the evidence arrayed against him. He nevertheless requested the jury be charged that criminal intent was an essential element of the offense.

The criminal intent required by § 16-3-655(A) has not been addressed by our appellate courts. A voluntary act, without more, is usually not enough to incur criminal liability, unless the offense is one of strict liability. *State v. Jefferies*, 316 S.C. 13, 20, 446 S.E.2d 427, 431 (1994) ("The modern definition of 'positive act' does not encompass the state of mind required for criminal liability."); *State v. Ferguson*, 302 S.C. 269, 271, 395 S.E.2d 182, 183 (1990) ("[O]rdinarily, in order to establish criminal liability, a criminal intent of some form is required."); *Staples v. United States*, 511 U.S. 600, 604–07 (1994) (requirement of *mens rea* is "firmly embedded" in our common law); *see* Holmes, *The Common Law* 54 (1881) ("The act is not enough by itself" to impose criminal liability).

An appellate court should decide cases on the narrowest possible ground; often the most important thing we can decide is not to decide. The essential question before us is whether a criminal intent charge was needed to supplement the portion of the definition of "sexual battery" that Adams challenges. The answer to this question depends upon legislative intent, and we begin the inquiry by looking at the statute. *Smith v. Tiffany*, 419 S.C. 548, 555, 799 S.E.2d 479, 483 (2017).

The portion of the definition of sexual battery at issue here clarifies that to be culpable, the act must be an "intrusion . . . into the genital or anal openings of another person's body." § 16-3-651(h). The statute does not define "intrusion," but its common meaning is "the act of intruding or the state of being intruded; esp: the act of wrongfully entering upon, seizing, or taking possession of the property of another." *Intrusion*, *Merriam-Webster Ninth New Collegiate Dictionary* (1988); *see also Intrusion*, *The Oxford English Dictionary* (2d ed. 2001) ("2. The action or act of entering forcibly . . . ."). By using "intrusion" rather than "touching" or even "insertion" in defining the battery, the legislature excluded accidental contact from the statute's scope and established an intent requirement Adams overlooks. *Carter v. United States*, 530 U.S. 255, 269 (2000) (courts are required to "read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct'" (quoting *United States v. X-Citement Video*, 513 U.S. 64, 72 (1994))). The statute criminalizes the act of intrusion, however slight. An intrusion, in its popular and accepted sense, is not just any act, but an act committed with wrongful intent. It is not mere volition. *See* Johnson, *Understanding General and Specific Intent: Eight Things I Know for Sure*, 13 Ohio St. J. Crim. L. 521, 532 (2016) (noting crime of battery requires touching of victim to be intentional and "general intent should not be confused with mere volition").

## IV. <u>Jury Charge on Unanimous Verdict</u>

Adams argues the trial court deprived him of his right to a unanimous verdict by refusing to charge the jury that it must unanimously agree as to the exact act committed by the defendant in violation of § 16-3-655(A). Adams asked for the unanimity charge because the indictment alleged he committed a sexual battery on victim by either "fellatio and/or digital intrusion of the victim's anal opening," and the evidence showed Adams committed both types of acts on victim at various times. Adams maintained that, without a unanimity charge, the jury could return a verdict of guilty if all twelve jurors agreed a sexual battery occurred, even though they were not unanimous as to which specific act of battery occurred.

Adams' argument includes a challenge to the indictment as duplicitous, meaning it alleged "two distinct and separate offenses in the same count. . . . present[ing] the risk that a jury divided on the two separate offenses in one count could nevertheless convict through a general verdict on the one count." *State v. Samuels*, 403 S.C. 551, 555–56, 743 S.E.2d 773, 776 (2013) (internal citations omitted). Although an argument that an indictment should be dismissed as duplicitous is waived if not made before the jury is sworn, *see* S.C. Code Ann. § 17-19-90 (2014), a defendant is still entitled to request an instruction requiring jury unanimity on which offense (if there

are two or more alleged in the same count) he committed. *See United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir. 1999). Indeed, "[w]here a defendant fails to object to an indictment before trial, the case proceeds under the presumption that the court's instructions to the jury will clear up any ambiguity created by the duplicitous indictment." *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007); *Samuels*, 403 S.C. at 557, 743 S.E.2d at 777 (noting where defendant proceeds to trial on duplicitous indictment, any "prejudice can be cured through jury instructions and the use of a special verdict form").

Although the indictment's "to wit" clause alleged two different, alternative ways Adams committed sexual battery on victim, the jury had no knowledge of this language. The trial court never read the indictment to the jury and wisely never allowed it to go back to the jury room during deliberations. In its opening instructions, the trial court advised the jury that Adams was "charged by way of an indictment with criminal sexual conduct with a minor under the age of 11." During its charge on the law, the trial court stated:

> As you heard the Defendant is charged with first degree [CSC] with a minor. The State must prove beyond a reasonable doubt that the Defendant engaged in a sexual battery with the victim. A sexual battery is sexual intercourse, fellatio, anal intercourse[,] or any intrusion however slight of any part of a person's body or any object into the genital or anal openings of another person's body except when the intrusion is acc[omplished] for medically recognized treatment or diagnostic purposes.

The trial court further charged that the only two possible verdicts were guilty or not guilty and "for there to be a verdict all twelve of you must agree." There was of course evidence Adams committed several different types of sexual battery, so the instruction as given left open the possibility the jury could split on which act Adams committed, yet all twelve of them could agree Adams committed some type of sexual battery upon victim.

The right to a unanimous verdict is guaranteed by our state and federal constitutions. S.C. Const. art. V, § 22; U.S. Const. amend. VI; *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020) (noting "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally," and tracing origin of the right to 14th century England). These guarantees, along with due process, require that the jury's findings as to each element of a crime must be unanimous. *See Richardson v. United*

*States*, 526 U.S. 813, 817 (1999); *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Because elements of a crime consist of facts, it follows that to comply with the unanimity guarantee the jury must unanimously agree on the facts that comprise each element of the crime. *Richardson*, 526 U.S. at 817–18. The difficulty arises when the evidence before the jury includes several ways or means by which the defendant could have committed the crime. For example, in a trial for murder, the evidence may be the defendant killed the victim with either a knife or a gun. As long as the jury unanimously agreed the State had proven that the defendant killed the victim with malice aforethought, constitutional guarantees do not require unanimity as to what weapon the defendant used; six could believe it was the gun, the other six the knife. Because the means of the killing is not an essential element, unanimity as to the means is not essential. It is undeniable that "when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Schad v. Arizona*, 501 U.S. 624, 649 (1991) (Scalia, J., concurring). This analytical model is serviceable when the defendant is charged with a single offense, but it can break down when the defendant is charged with multiple offenses in a single count, as in a duplicitous indictment.

Yet the question of whether the indictment was duplicitous is not before us, and neither is the related question of whether each sexual battery constitutes a separate violation of § 16-3-655. Besides not being before us, these questions are side trails off the path of the central concern of the unanimity issue: what facts must the jury unanimously agree upon to satisfy the essential element of sexual battery in the crime of first-degree CSC. In other words: what does the statute require the jury to be unanimous about. *See Schad*, 501 U.S. at 635–36 (rejecting dissent's proposed "inflexible rule of maximum verdict specificity" that would require that when a statute lists alternative means of committing the crime, the jury must indicate which alternative it has agreed upon "even where there is no indication that the statute seeks to create separate crimes. This approach rests on the erroneous assumption that any statutory alternatives are *ipso facto* independent elements defining independent crimes under state law, and therefore subject to the axiomatic principle that the prosecution must prove independently every element of the crime").

In discussing legislative intent, we begin, as always, with the words of the statute. If they do not provide the answer we may resort to the statute's structure and text, and, if appropriate, history, tradition, and fairness. *Richardson*, 526 U.S. at 818–19; *see Schad*, 501 U.S. at 637. Section 16-3-655 states in relevant part: "A person is guilty of [CSC] with a minor in the first degree if . . . the actor engages in sexual

battery with a victim who is less than eleven years of age." There is no ambiguity in the text, which tells us flatly an element that must be proven is a "sexual battery." "Sexual battery" is defined in § 16-3-651(h) as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." Therefore, to convict a defendant, the jury must find the State proved the fact that defendant engaged in a sexual battery with a minor less than eleven years old. *See State v. Cross*, 427 S.C. 465, 474, 832 S.E.2d 281, 286 (2019). "Sexual battery" is the fact the legislature intended the jury to be unanimous about in order to convict a defendant of the crime. Sexual battery of a minor less than eleven years old is the conduct the statute is designed to prohibit and punish; the precise form of the sexual battery is immaterial. Aided by the light of this intent, the issue can be further focused: if some jurors believe the defendant committed fellatio to violate § 16-3-655, and others believe he committed an anal intrusion, that disagreement does not create a reasonable doubt about the fact the defendant committed a sexual battery. *See Schad*, 501 U.S. at 640–43 (legislatures often list alternative means without intending them to be separate offenses); *State v. Hartness*, 391 S.E.2d 177, 178–81 (N.C. 1990) (holding specific act is not a factual element requiring unanimity in prosecution under indecent liberties statute).

A profitable analogy is the federal crime prohibiting a felon from possessing "any firearm," 18 U.S.C. § 922(g) (West 2020). The unanimity issue appears when the trial evidence includes proof the defendant possessed several firearms, say a shotgun and a rifle. The federal courts of appeal have rejected defendants' arguments that unanimity requires the jury be instructed they must agree on the specific firearm possessed. As the First Circuit has explained:

> The plain language of the statute suggests that the element of the crime is simply the possession of "any firearm." If so, then twelve jurors who agreed that a defendant possessed a firearm, but disagreed about which particular one, would be unanimous on the element—that he possessed "any firearm." Their disagreement would be acceptable because it would only concern "underlying brute facts."

*Verrecchia*, 196 F.3d at 299 (quoting *Richardson*, 526 U.S. at 817); *see also United States v. Pollock*, 757 F.3d 582, 587–88 (7th Cir. 2014) (holding text and history of 18 U.S.C. § 922(g) "reflects the desire of Congress to keep *any* firearm out of the

hand of convicted felons, regardless of gun type," and therefore, the particular firearm possessed is not an element of the crime, "but instead the means used to satisfy the element of 'any firearm,'" "[i]f one juror believed the defendant possessed a rifle, but a different juror believed the defendant possessed a shotgun, both would still be in agreement that the defendant possessed 'any firearm'").

In addition to the statutory text, the Supreme Court has recognized considerations of fairness can play into deciding whether a fact is an element or a means. *Richardson*, 526 U.S. at 820. The broader a statute, the more likely the constitution will limit the "State's power to define crimes in ways that would permit juries to convict while disagreeing about means." *Id.* The risk of unfairness posed by using a general verdict in Adams' case was minimal, as the conduct criminalized by § 16-3-655 is quite narrow, and the evidence of Adams' sexual acts with victim was limited by type, time, and circumstance. As our supreme court has observed, the statute does not prohibit any sexual battery but "only certain specific acts, which can be loosely described as involving penetration of some sort." *State v. Elliott*, 346 S.C. 603, 606, 552 S.E.2d 727, 729 (2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005). We note too that sexual offenses involving children often present unique proof challenges warranting special considerations, long recognized by the law. *State v. Tumbleston*, 376 S.C. 90, 101–02, 654 S.E.2d 849, 855 (Ct. App. 2007) (holding time is not a material element of CSC with a minor, and the State is not required to provide a specific "day, or even year" in an indictment, and noting "[t]he stealth and repetitive nature of the alleged conduct compels identification of the broader time period. The victim is a young child, whom one cannot reasonably expect to recall the exact dates of the sexual abuse"); *see also State v. Perry*, Op. No. 27963 (S.C. Sup. Ct. filed May 6, 2020) (Shearouse Adv. Sh. No. 18 at 48) (Kittredge, J., dissenting) (cataloging special proof problems in child sexual abuse prosecutions that have been "recognized by our legislature and the Rules of Evidence"). These considerations extend to constitutional unanimity concerns. *See* LaFave, 6 Crim. Pro. § 24.10(c) *Multi-theory Verdicts* (4th ed. 2019) ("[W]hen a crime has no common law analogy, a generic verdict may be acceptable if the crime specifies different means of commission that reflect no more than different modes of establishing the same basic conduct . . . . Sexual assault cases often present this issue." (footnotes omitted)).

We recognize that in sexual assault cases where the defendant is charged with multiple sexual acts in a single count indictment, courts in many states require either the prosecution to elect a single act or the trial court to instruct the jury they must unanimously agree upon the act supporting the conviction. *See, e.g., State v. Ballenger*, 183 A.3d 550, 557–58 (Vt. 2018); *King v. Commonwealth*, 554 S.W.3d

343, 350–56 (Ky. 2018); *State v. Celias-Garcia*, 344 S.W.3d 150, 154–58 (Mo. 2011) (collecting cases). These states appear to have embraced a version of "maximum verdict specificity." Such an approach to § 16-3-655 under the facts here would collide with legislative intent and prove unworkable in practice. *See Schad*, 501 U.S. at 649–50 (explaining that when a single crime can be committed in several ways the rule that jurors need not agree upon the means "is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict") (Scalia, J. concurring). Because facts are many and the springs of jury thought are secret, a general verdict often cannot tell us the precise facts the jury agreed upon, so the question is what degree of silence the constitution will tolerate. Requiring a special verdict for every granular factual issue the evidence might generate would upend the jury system; tune verdicts to an overly sensitive frequency, and the feedback might prove deafening.

Again, the question is what level of verdict specificity does the constitution demand to safeguard the defendant's right to have the jury unanimously agree on the facts necessary to constitute the crime. It seems the Supreme Court, "convinced . . . of the impracticability of trying to derive any single test for the level of definitional and verdict specificity permitted by the Constitution," has resigned itself to a test that considers the statutory text, history, and tradition and then probes for fundamental fairness and "rationality." *Schad*, 501 U.S. at 637. This is a blunt tool but the best the Court could forge, and the one we must use in working on the federal constitutional question.

We of course may interpret the unanimity guarantee of our state constitution, S.C. Const. art. V. § 22, differently—and more (but no less) expansively—than its federal counterpart. But the specificity required rises and falls with the specific statute and facts at hand, complicating the crafting of reliable principles. In acknowledging the limits of legal classification when it comes to analyzing juror unanimity, we have plenty of company, *see, e.g.*, *Schad*, *supra*; Bah, *Jury Unanimity and the Problem of Specificity*, 91 Tex. L. Rev. 1203 (2013); Roth, *Alternative Elements*, 59 UCLA L. Rev. 170 (2011); Thomas, *Requirement of jury unanimity as to mode of committing crime under statute setting forth the various modes by which offense may be committed*, 75 A.L.R.4th 91 (1989).

We return to the key inquiry: whether the jury instruction and verdict form provides assurance that the State met its burden of proving every element of the crime beyond a reasonable doubt. Our review of the statutory text, structure, and purpose of § 16-3-655, as well as history, tradition, and fairness, convinces us that within the element of a sexual battery, the jury is not required to agree on the factual means by

which the sexual battery occurred as long as the jury agrees on the fact that "a" sexual battery occurred. Because this factual finding was implicit in the jury's general verdict, we hold no further unanimity was needed, and the trial court did not err in declining Adams' unanimity instruction.

## V. New Trial Based on After-Discovered Evidence

Adams argues the trial court erred in denying his new trial motion based on after-discovered evidence because victim's mother, who was subject to the trial court's sequestration order, listened to portions of the trial through a courtroom door. A new trial on the ground of after-discovered evidence may only be granted if the evidence (1) would probably change the result if a new trial is granted; (2) has been discovered since the trial; (3) could not have been discovered before the trial by the exercise of due diligence; (4) is material to the issue; and (5) is not merely cumulative or impeaching. *State v. Spann*, 334 S.C. 618, 619–20, 513 S.E.2d 98, 99 (1999). Relief therefore depends upon the post-trial discovery of previously unknown, outcome-changing facts the moving party could not have, with due diligence, unearthed before trial.

We review the trial court's new trial ruling for abuse of discretion, *State v. Irvin*, 270 S.C. 539, 545, 243 S.E.2d 195, 198 (1978), and we see none. As victim's mother, she had a constitutional right to be present at Adams' trial. *See* S.C. Const. art. I, § 24(A)(3), (C)(2). And victim's mother's conduct was not material to whether Adams was guilty of first-degree CSC with a minor. Adams did not demonstrate how victim's mother's testimony was affected by her alleged violation of the order; she testified she could not hear much of anything through the door. Victim's mother was the third witness to testify, and the two witnesses before her did not testify to the specifics of victim's disclosure and the alleged offenses or other details victim's mother testified to. At best, victim's mother's eavesdropping was pure impeachment evidence, which can never justify granting a new trial. Accordingly, the trial court did not abuse its discretion in denying Adams one.

**AFFIRMED.**

**WILLIAMS and KONDUROS, JJ., concur.**